**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM CHARLES PAYTON,
       *Petitioner-Appellant,*

v.

VINCENT CULLEN, Warden of
California State Prison at San
Quentin,*
       *Respondent-Appellee.*

No. 07-99020

D.C. No.
CV-94-04779-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
December 14, 2010—Pasadena, California

Filed September 2, 2011

Before: Pamela Ann Rymer, Ronald M. Gould, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Rymer

---

*Vincent Cullen is substituted for his predecessor, Robert L. Ayers, as Warden of California Prison at San Quentin. Fed. R. App. P. 43(c)(2).

## COUNSEL

Gail Ivens, Deputy Federal Public Defender, Los Angeles, California, (argued); Brian M. Pomerantz, Deputy Federal

Public Defender, Los Angeles, California, for the petitioner-appellant.

A. Natasha Cortina, Deputy Attorney General, San Diego, California, for the respondent-appellee.

## OPINION

RYMER, Circuit Judge:

William Charles Payton raped and murdered Pamela Montgomery in the early hours of the morning on May 26, 1980. She had been stabbed twelve times, six of the wounds in a line from Montgomery's stomach to her groin. After that he repeatedly stabbed Patricia Pensinger with a knife, as well as her ten-year old son Blaine who was trying to help his mother. Pensinger suffered 40 stab wounds to her face, neck, back, and chest; Blaine had 23 stab wounds to his face, neck, and back. They survived. Payton's wife testified that when he got home at 6:15 AM, his clothes, face, and hands were covered in blood.

Payton was convicted of the first degree murder and rape of Pamela Montgomery, and the attempted murders of Patricia and Blaine Pensinger. He was sentenced to death. The California Supreme Court affirmed on direct appeal and on habeas review. *People v. Payton*, 839 P.2d 1035 (Cal. 1992). Payton filed a federal habeas petition on May 3, 1996; in two orders, one issued June 1, 1999 and the other December 17, 1999, the district court granted summary judgment for the state on guilt phase claims, and for Payton on a claim of instructional error applying California's "factor (k)." Cal. Penal Code § 190.3(k). Having granted the writ on this sentencing issue, the court did not address the merits of other penalty phase claims — IV(A)(5), IV(C)(1)-(17), IV(D), and V(A)-(D). The parties cross-appealed.

The three-judge panel reversed on the factor (k) issue, and affirmed on Payton's claims that his counsel rendered ineffective assistance in failing to investigate and present evidence about his personal, family, and mental background and to pursue the background of a jailhouse informant during the penalty phase; that prosecutorial misconduct offended due proccess; and that he received inadequate funds to develop defenses and investigate informants. *Payton v. Woodford*, 258 F.3d 905, 922-25 (9th Cir. 2001). The panel also rejected Payton's arguments that his counsel prejudicially failed to develop and present evidence of Post Traumatic Stress Disorder (PTSD) resulting from service in Vietnam, and that his sentence should be reversed for cumulative error. *Id.* at 925. The case was reheard en banc. *Payton v. Woodford*, 273 F.3d 1271 (9th Cir. 2001) (granting rehearing en banc and ordering panel opinion not to be cited as precedent). The en banc panel reinstated the district court's decision on factor (k), *Payton v. Woodford*, 299 F.3d 815, 822 (9th Cir. 2002) (en banc), applying pre-AEDPA standards. The Supreme Court held that AEDPA applied. *Woodford v. Payton*, 538 U.S. 975 (2003). Applying AEDPA, the en banc panel again affirmed on factor (k), *Payton v. Woodford*, 346 F.3d 1204, 1206-07 (9th Cir. 2003), and the Supreme Court reversed. *Brown v. Payton*, 544 U.S. 133, 147 (2005). On August 15, 2005, the en banc panel remanded to the district court to consider Payton's "remaining claims not already addressed on the merits."

On remand, Payton sought to relitigate several issues that the district court (and the three-judge panel) had previously decided. The district court believed that it could rehear previously adjudicated claims, but saw no convincing reason to do so. It addressed the "remaining claims" that had not been resolved, denying each and thus, denying relief on Payton's petition. The court granted a certificate of appealability (COA) on Claim IV(C)(15), which challenges the constitutionality of California's lethal injection protocol.

In addition to the certified issue, Payton appeals what he calls two "procedural issues" and two uncertified issues. The

"procedural issues" arise out of Claim IV(A)(4) — whether counsel rendered ineffective assistance in the penalty phase for failure to investigate and present evidence of social history — and Claim IV(B)(1) — whether the prosecution's failure to disclose a confidential informant's status as a government agent was a *Brady* violation. The district court denied both claims in its 1999 ruling on summary judgment, and refused to reconsider them on remand. The two uncertified issues, on which Payton seeks certification, are Claim IV(A)(5) — whether he was deprived of effective assistance of counsel for failure to investigate or present evidence of PTSD at the penalty phase — and Claim IV(E) — whether his sentence must be overturned because of cumulative error. The district court did not reach either issue in its 1999 orders, although both issues were raised on appeal and resolved by the three-judge panel. In its most recent order, the district court denied both claims on the merits.

We consider all claims as if they were properly before us. We dismiss the challenge to California's lethal injection protocol as premature, and otherwise affirm the judgment.

I

**[1]** Payton's habeas petition claims that California's lethal injection protocol amounts to cruel and unusual punishment. The protocol in place when his petition was filed was revised on May 15, 2007. In turn, that protocol was invalidated because it failed to comply with applicable procedural requirements. *Morales v. Cal. Dep't of Corrs. & Rehab.*, 85 Cal. Rptr. 3d 724, 741 (Cal. Ct. App. 2008). No new protocol was in place when the district court ruled.[1] As Payton agrees,

---

[1]The California Office of Administrative Law approved a revised protocol on July 30, 2010, with an effective date of August 29, 2010. Cal. Code Regs. tit. 15 §§ 3349 et seq. (2010).

the claim was unripe, and it should have been dismissed. He remains free to renew the challenge to a current protocol.[2]

II

The parties dispute what was before the district court on remand, and whether it abused its discretion in refusing to consider two claims. Regardless, considering all of Payton's arguments and evidence proffered in support, we conclude that both claims fail on the merits.

A

First, Payton contends that trial counsel, James Merwin, failed to conduct an adequate investigation and to present sufficient mitigation evidence to individualize and humanize him or to explain his background to the jury in the penalty phase. We disagree.

One mental health expert had evaluated Payton before Merwin took over Payton's defense; Merwin then consulted two additional mental health experts, Dr. Ernest Klatte and Dr. Edward Kaufmann, before trial. They found that Payton was intelligent, had no evidence of organic brain pathology, had a serious personality disorder, and had abused drugs in the past. They concluded Payton had no viable mental state defense. Payton indicated that he had problems dealing with women and sex. He also related that his parents were divorced when he was five, and he didn't know his biological father until he was about twenty-five; his mother remarried an engineer who adopted Payton; and his parents were kind to him,

---

[2]We express no opinion as to whether this should be by way of habeas relief or through an action under 42 U.S.C. § 1983. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) (per curiam); *Nelson v. Campbell*, 541 U.S. 637, 643-44 (2004) (noting that the Court had declined to reach the question of whether a suit seeking to enjoin a particular means of effectuating a death sentence is properly viewed as a § 1983 claim or a habeas claim).

spent considerable time with him, and spoiled him. In addition, Merwin or his investigator interviewed members of Payton's family (his half brothers, biological father, and parents), and requested school records and information on Payton's military service. The defense called eight witnesses during the penalty phase who focused on Payton's remorse, commitment to religion, and positive influence on other inmates.

Since trial, Payton adduced evidence that he suffered from PTSD; he had experienced an early feeling of neglect; for the first five years of his life that his biological father was there, his father was alcoholic and abusive, and molested and raped Payton's step-sister; he was sad as a child; his stepfather was stern and verbally abusive; he had a possible learning disability; and he began using drugs as a teenager. Payton produced new expert reports in 2006 from Julie Kriegler, a social historian; Pablo Stewart, a psychiatrist; and Ricardo Weinstein, a neuropsychologist. They explain Payton's family history, and offer observations about traumatized children. The experts conclude that Payton suffered from extreme mental and emotional disturbance.

[2] Nothing that Merwin was told at the time of trial would have alerted him to a family history of the sort that Payton now espouses. The new expert reports run counter both to what contemporaneous examinations by Dr. Klatte and Dr. Kaufman revealed, and to earlier reports in Payton's Idaho state prison records.[3] Counsel interviewed family members, sought records, and consulted experts who conducted thorough evaluations. In these circumstances we cannot see how

---

[3]State rehabilitation reports indicated that Payton felt his parents indulged him and gave him everything he wanted, which caused him to become accustomed to getting his own way, and to apply this same rule when he became an adult. A form filled out by Payton's mother on April 24, 1976, also indicated that Payton had a happy home life but seemed to lose interest in school during his senior year in high school. That's when his parents agreed he could join the army.

Merwin performed deficiently. *See, e.g., Hendricks v. Calderon*, 70 F.3d 1032, 1038-39 (9th Cir. 1995).

With respect to PTSD, the record indicates that Payton spent twenty-two days in Vietnam, saw no action, and was removed due to drug abuse. The California Supreme Court found, based on an evidentiary hearing held by a special master, that Payton's account of a combat role was untrue, counsel was not deficient in failing to investigate PTSD, and that Payton had not shown prejudice as the jury would "undoubtedly have given [evidence of PTSD] little weight once it learned that the primary basis for the initial diagnosis — the vivid and compelling descriptions of defendant's alleged combat experiences in Vietnam — was sheer invention." *People v. Payton*, 839 P.2d at 1054. We cannot say this determination is unreasonable.

**[3]** Even accepting Payton's recent proffer at face value, and assuming deficiency, Payton has not shown prejudice. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) (indicating that ineffectiveness claim may be disposed of on the ground of lack of prejudice alone); *Wong v. Belmontes*, 130 S. Ct. 383, 384 (2009) (per curiam) (emphasizing that both *Strickland* prongs must be met). "When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695.

**[4]** The crimes here were vicious. Evidence showed that Payton had previously committed a similar crime in the past, using a knife on a girlfriend when he wanted sex. Even if his biological father were abusive in the first five years of Payton's childhood and he felt sad and neglected, his experience is not comparable to those in other cases where courts have

found a reasonable probability that the outcome would have been different. *See, e.g., Rhoades v. Henry*, 638 F.3d 1027, 1050-52 (9th Cir. 2011) (discussing and contrasting *Rompilla v. Beard*, 545 U.S. 374, 391-92 (2005), *Wiggins v. Smith*, 539 U.S. 510, 523-25 (2003), and *Williams v. Taylor*, 529 U.S. 362, 395-96 (2000)).[4] Nor is Payton's suggestion of PTSD at all like *Porter v. McCollum*, 130 S. Ct. 447 (2009). Counsel in *Porter* had obtained no records and conducted no interviews, and Porter's mitigating evidence was far stronger than Payton's in that Porter suffered from a brain abnormality and served on the front lines in two horrific battles of the Korean War. *Id*. at 453-54. Accordingly, we conclude there is no reasonable probability that the sentence would have differed.

B

Payton's second "procedural" claim is that the district court should have reconsidered its prior ruling on his *Brady* claim. *Brady v. Maryland*, 373 U.S. 83 (1963). The claim is that the prosecutor failed to disclose that Daniel Escalera was acting as a government agent in eliciting information from and testifying against Payton. The district court rejected this claim in its June 1999 order, but on remand Payton submitted a new statement, dated July 13, 2006, in which Escalera states that, when he testified in 1981, he "was and had been for some time working for various police agencies" and considered himself to be working as a government agent from 1977 until September 18, 1982. Based on this statement, Payton maintains that Escalera committed perjury when he testified at trial that he was not working for a law enforcement agency "in any capacity." Prejudice, Payton maintains, inhers because the

---

[4]This case is also distinguishable from *Pinholster v. Ayers*, 590 F.3d 651, 675-79 (9th Cir. 2009) (en banc), *rev'd sub nom. Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). Pinholster's counsel failed to prepare a mitigation defense at all, and his mitigation evidence was much stronger in that it would have shown Pinholster suffered from organic brain damage and a severe history of personal physical abuse and deprivation.

trial court would have prevented Escalera from testifying to Payton's alleged confession had it known that Escalera was operating as a police agent; and because, even if he had testified, impeachment would have "changed the calculus on the believability of his testimony" and so, would have affected the jury's judgment.

[5] We do not believe that disclosure of information in the 2006 proffer makes it reasonably probable that the outcome would have been different. *See Kyles v. Whitley*, 514 U.S. 419, 434 (1995). While it would no doubt have been helpful to Payton because of its impeachment value, neither Escalera's testimony nor the newly-presented evidence is as clear cut as Payton would have it. The question and answer at trial where Escalera denied working for any law enforcement agency when he talked with Payton could be interpreted as referring either to Payton's case, or to other cases. Even if Escalera thought of himself as working for years as a government agent, his 2006 statement does not indicate that Escalera was working as a government agent *on this case*. Nor does it indicate that he was continuously employed, or working for any agency at the time he talked to Payton. The jury knew that Escalera had prior convictions, and that he had recently pled to a felony robbery charge in exchange for a possible prison sentence of one to seven years on which he hoped for leniency for testifying against Payton. Thus, it knew he had a motive for testifying, and for testifying in such a way as to maximize benefit to himself. Payton conceded in argument before this court in 2001 that even if the California courts had known that Escalera had a prior working relationship with law enforcement, they would not have precluded him from testifying. Finally, though Escalera's recital of Payton's confession that he had a "severe problem" with women and wanted to "stab and rape them" was undeniably damaging, there was no reasonable doubt that Payton did have a severe problem with women and had stabbed and raped Montgomery and stabbed Pensinger. There was evidence that he had also stabbed a for-

mer girlfriend. In sum, considering the entire record, our confidence in the outcome is not undermined.

## III

Payton pursues two uncertified issues: whether he was deprived of effective assistance of counsel on account of Merwin's failure to investigate or present evidence of PTSD at the penalty phase (Claim IV(A)(5)); and whether his sentence must be overturned for cumulative error (Claim IV(E)). To obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Resolving doubts in Payton's favor, *see Valerio v. Crawford*, 306 F.3d 742, 767 (9th Cir. 2002) (en banc), we certify both claims.

## A

**[6]** As we have explained, Payton's claim founded on PTSD fails. Merwin investigated Payton's service record, and experts examined Payton, but no red flags warranted further investigation. Having retained qualified experts, it was not objectively unreasonable for Merwin not to seek others. *See Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir. 1998). There was no substantial evidence that a PTSD defense might exist until Payton lied about his combat experience. Although his mother believed Payton had changed after returning from Vietnam, and a Sheriff's Department report reflects that Payton claimed to have "blanked" his entire Vietnam encounter, the force of both depends on Payton's fabrication. Neither is a sign of the order of magnitude that existed in cases where deficiency has been found. *See, e.g., Lambright v. Stewart*, 241 F.3d 1201, 1207-09 (9th Cir. 2001) (noting that Lambright's presentence Psychological Evaluation related his service in Vietnam, witnessing the violent death of friends, and suffering a mental breakdown upon returning). Thus, the California Supreme Court's determination that Payton had not shown prejudice is neither contrary to, or involved an unrea-

sonable application of, clearly established law, nor did it result in a decision based on an unreasonable application of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1)-(2).

B

**[7]** While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness. *Chambers v. Mississippi*, 410 U.S. 284, 298, 302-03 (1973); *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007). Most of the errors Payton seeks to cumulate we have considered and rejected; to the extent there was any error, his trial was not rendered fundamentally unfair. Beyond this, Payton argues new grounds for error that were not raised in his federal habeas petition.[5] This he may not do without having first met the prerequisites of 28 U.S.C. § 2244(b)(2). Nevertheless, considering the effect of such errors, our conclusion remains the same.

AFFIRMED.

---

[5]These include that the prosecution misled the trial court into allowing jailhouse informants to testify they saw Payton gambling or extracting money from other inmates, when Escalera declared in 2006 that he never saw Payton do these things; that the prosecution's presentation of Escalera's testimony was improper under *Simmons v. South Carolina*, 512 U.S. 154 (1994), because it was intended to suggest future dangerousness; that the trial judge, who he claims was biased against capital defendants, improperly refused Payton's request for new counsel; and that the trial court failed to answer a note from the jury requesting clarification regarding the sentence of life without parole.