**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WILLIAM CHARLES PAYTON,
*Petitioner-Appellant*,

v.

RONALD DAVIS,
*Respondent-Appellee.*

No. 17-55054

D.C. No.
2:94-cv-04779-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted September 25, 2018
Pasadena, California

Filed October 10, 2018

Before: Ronald M. Gould, Richard C. Tallman,
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Tallman

# SUMMARY[*]

## Habeas Corpus

The panel denied California state prisoner William Charles Payton's request for a certificate of appealability to appeal the district court's denial of his motion under Federal Rule of Civil Procedure 60(d)(3), alleging fraud on the court and seeking relief from the court's prior order denying habeas relief under 28 U.S.C. § 2254.

Payton argued that the district attorney who secured his conviction and death sentence made false sworn statements during the federal habeas proceedings, and that these statements were part of a larger scheme involving assignment of inmate informants to cells next to defendants incarcerated in Orange County, California, in hopes of obtaining incriminating admissions.

The panel held that Federal Rule of Civil Procedure 60(d), like Federal Rule of Civil Procedure 60(b), is subject to the requirement in 28 U.S.C. § 2253(c)(1) for a certificate of appealability.

The panel held that Payton is not entitled to a certificate of appealability because it is beyond debate that, regardless of how the prosecution obtained the informants' testimony or later explained its tactics to the district court, the informants' testimony was not material in light of the overwhelming evidence of Payton's guilt.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Michael Parente (argued) and Susel Carrillo-Orellana, Deputy Federal Public Defenders; Margo Rocconi, Supervising Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant.

A. Natasha Cortina (argued) and Holly D. Wilkens, Supervising Deputy Attorneys General; Julie L. Garland, Senior Assistant Attorney General; Xavier Becerra, Attorney General of California; Office of the Attorney General, San Diego, California; for Respondent-Appellee.

**OPINION**

TALLMAN, Circuit Judge:

William Charles Payton requests a certificate of appealability ("COA") to appeal the district court's denial of his motion under Federal Rule of Civil Procedure 60(d)(3), alleging fraud on the court and seeking relief from the court's prior order denying habeas relief under 28 U.S.C. § 2254. Payton argues that the district attorney who secured his conviction and death sentence made false sworn statements during the federal habeas proceedings, and that these statements were part of a larger scheme involving assignment of inmate informants to cells next to defendants incarcerated in Orange County, California, in hopes of obtaining incriminating admissions. Payton's motion also presents the threshold question—one of first impression in our circuit—whether Rule 60(d) is subject to the COA requirement in 28 U.S.C. § 2253(c)(1). We conclude that a

COA is required, but that Payton is not entitled to one. We DENY his request.

I

Thirty-eight years ago, on May 26, 1980, Payton raped Pamela Montgomery and stabbed her to death with a butcher knife.[1] During the frenzied attack, he also attempted to kill Patricia Pensinger and her young son. Both survived and identified Payton as the attacker. A jury convicted him in 1981 and found the circumstances sufficient to sentence Payton to death. Nearly forty years later, the parties are still litigating Payton's conviction and sentence.

A

Sometime before May 26, 1980, Payton had been a boarder at Patricia Pensinger's home in Garden Grove, California. On that date, Pamela Montgomery and Patricia's 10-year-old son, Blaine, were living in the house. But Payton no longer resided there. At 4:00 a.m., Payton entered the kitchen, where Patricia—unable to sleep—was working on a crossword puzzle. Payton said he'd had car trouble. The two chatted, and Payton drank a few beers. Pamela Montgomery came in for a glass of water, and Patricia introduced her to Payton. He later asked Patricia if he could

---

[1] The evidence overwhelmingly pointing to Payton's guilt and lengthy procedural background of his numerous appeals are also set forth in the California Supreme Court's, this court's, and the United States Supreme Court's previous opinions in this case. *See, e.g.*, *People v. Payton*, 839 P.2d 1035 (Cal. 1992); *Payton v. Woodford*, 258 F.3d 905 (9th Cir. 2001); *Payton v. Woodford*, 346 F.3d 1204 (9th Cir. 2003) (en banc); *Brown v. Payton*, 544 U.S. 133 (2005).

sleep on the couch, and she obliged. Patricia went to her bedroom, where Blaine was already sleeping.

Patricia was startled awake some time later when Payton stabbed her in the back with a butcher knife. She rolled over and he began to stab her in the face and neck. The vicious attack awakened Blaine. When Blaine tried to snatch the knife away, Payton stabbed him, too. When Payton tried to stab Patricia in the abdomen, the knife blade bent. Payton got off the bed and yelled he was leaving. Patricia told Blaine to escape while she distracted Payton. She found him in the kitchen with a second knife. Payton stabbed Patricia repeatedly in the back and attacked Blaine as he ran through the kitchen. When a male boarder woke up, Payton dropped the knife and fled. Patricia suffered a total of 40 stab wounds to her face, neck, back, and chest. Blaine incurred 23 stab wounds to his face, neck, and back. Miraculously, both survived.

Pamela Montgomery was found dead on her bedroom floor, lying in a pool of blood. Her body had 12 stab wounds, half of which formed a line from her stomach to pubic area. Pamela had been sexually assaulted. She also had defensive wounds. The saliva and semen collected from her body were consistent with Payton's. Pamela had been dead 15 to 30 minutes before her body was found. Payton fled that morning and was eventually arrested in Florida.

B

The Orange County District Attorney charged Payton with the rape and special circumstance murder of Pamela Montgomery, and the attempted murders of Patricia and Blaine Pensinger. While incarcerated in the Orange County Jail, Payton made incriminating statements to two inmates, Alejandro Garcia and Daniel Escalera, who reported his

admissions to law enforcement. After an evidentiary hearing, the state trial court determined the two inmates were not police agents.

At the guilt phase of the trial, the prosecution offered Patricia's and Blaine's eyewitness accounts. Forensic experts testified about the bodily fluids taken from the victim's body, and law enforcement officers testified to the crime scene. Payton's wife testified that Payton had returned home with fingernail scratches on his back and covered in blood, some of which was still wet, including blood on his genital area.

Alejandro Garcia testified that Payton had confessed to him, while the two were in jail, that he had raped and stabbed Pamela Montgomery because he had "this urge to kill." Defense counsel impeached Garcia with his extensive criminal record and previous deals with law enforcement.[2] Garcia testified that he was not offered nor did he receive anything in exchange for his testimony against Payton. The defense called no witnesses. The jury convicted Payton on all counts.

At the penalty phase, a former girlfriend of Payton's testified that she once awoke, after intercourse, to Payton standing over her holding a kitchen knife to her neck, and that he began stabbing her chest and arms. Escalera, the other jailhouse informant, testified to his conversation during which Payton confessed he had "severe problems with sex and women," that he would "stab and rape them,"

---

[2] Garcia's criminal record included felony forgery, two burglaries, and grand theft. Garcia testified he had "cleared paper" on over 300 burglaries in exchange for probation on his most recent burglary charge. The jury heard all of this.

and that every woman "was a potential victim, regardless of age or looks." Escalera admitted that he hoped for leniency in exchange for testifying against Payton; he too was impeached with his criminal record. The defense called eight witnesses. Their testimony focused on Payton's religious conversion in prison. In December 1981, the Orange County Superior Court jury returned a sentence of death.

## C

The California Supreme Court consolidated and reviewed Payton's automatic direct appeal and a separate habeas petition alleging ineffective assistance of counsel. *People v. Payton*, 839 P.2d 1035, 1039 (Cal. 1992). The state high court rejected Payton's claims related to the two jailhouse informants, reasoning that Payton "was given full opportunity to explore in front of the jury any motive to cooperate or other bias on the part of all the witnesses, including the jailhouse informant[s]." *Id.* at 1040. Moreover, "[Escalera]'s testimony formed but a small part of the overall strong evidence against defendant" because "the independent evidence of defendant's crimes corroborated the informant's testimony."[3] *Id.* at 1041, 1043. The California Supreme Court affirmed the judgment of conviction and death sentence and denied Payton's habeas petition. *Id.* at 1054. The United States Supreme Court

---

[3] The California Supreme Court also rejected Payton's claim that his trial counsel had failed to raise a psychological defense related to his combat experiences in Vietnam. *Id.* at 1053–54. The state high court determined that Payton's wartime allegations were completely fabricated. *Id.* at 1052. He had in fact been discharged for heroin abuse after 22 days, and spent no time in combat. *Id.*

denied certiorari. *Payton v. California*, 510 U.S. 1040 (1994).

Payton filed a second state habeas petition in 1996 that reasserted his informant-related claims. Payton alleged that the prosecutor engaged in misconduct by failing to disclose that the informants were government agents. Payton submitted evidence that deputy district attorney Michael Jacobs was at Escalera's change of plea hearing and met with Escalera's attorney during the pendency of Escalera's 1981 robbery case. The California Supreme Court denied all of Payton's claims.[4]

In 1996, Payton filed a petition for a writ of habeas corpus in federal court, where his case has remained for over two decades. Payton alleged, among other claims, violations related to the informants' testimony under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Massiah v. United States*, 377 U.S. 201 (1964). The district court ultimately entered summary judgment for the State on Payton's informant-related claims, but granted habeas relief on an unrelated claim concerning the prosecutor's improper argument about mitigating evidence under factor (k) ("factor (k) issue").[5] Both parties appealed.

We reversed on the factor (k) issue. *Payton v. Woodford*, 258 F.3d 905, 919 (9th Cir. 2001). We also granted a COA on Payton's prosecutorial misconduct claims. *Id.* at 910. In later rejecting those claims, we reasoned that Payton could

_____

[4] Payton filed a third habeas petition in the California Supreme Court in 2013. Again, all of his collateral constitutional claims were denied.

[5] Factor (k) is a mitigation factor the jurors were to consider under California law, Penal Code § 190.3. *See People v. Payton*, 839 P.2d at 1047.

not show prejudice. *See, e.g.*, *id.* at 920 ("[T]he government's case was overwhelming," as it "linked [Payton] to the crimes by physical evidence and eye-witness testimony," and "[t]he crimes were vicious and Payton had committed a similar attack in the past."), 921 ("[A]ssuming counsel should have followed-up on [information regarding Garcia], we nevertheless see no reasonable probability that the results would have been different."), 922–23 (rejecting *Brady* claim on the ground "that the additional, undisclosed information was [not] material, as it would not have undermined Garcia's credibility any more than his credibility was already undermined").

Sitting en banc, we affirmed the denial of relief as to the guilt phase, including Payton's informant-related claims. *Payton v. Woodford*, 299 F.3d 815, 819 n.1 (9th Cir. 2002) (en banc) ("We adopt the panel's reasoning on the guilt phase issues as our own."); *see also id.* at 832 (Tallman, J., concurring in part and dissenting in part) (concurring with the court on this ground, and noting that "not a single member of this en banc panel believes that Payton was prejudiced with respect to the guilt phase in light of the overwhelming evidence against him"). However, we reinstated the district court's decision on the factor (k) issue. *Id.* at 830. The Supreme Court then reversed and remanded on the factor (k) issue with instructions to apply AEDPA deference. *Woodford v. Payton*, 538 U.S. 975 (2003).

Applying AEDPA on remand, we again rejected Payton's claims concerning the guilt phase, and affirmed habeas relief on the factor (k) issue. *Payton v. Woodford*, 346 F.3d 1204, 1206–07 (9th Cir. 2003) (en banc). The Supreme Court reversed again on the factor (k) issue, holding that the California Supreme Court's decision was not objectively unreasonable under AEDPA. *Brown v.*

*Payton*, 544 U.S. 133, 147 (2005). We then remanded to the district court to resolve "all of petitioner's remaining claims not already addressed on the merits." On remand, Payton reasserted his *Brady* and *Massiah* claims but the district court declined to rehear them.

We affirmed, rejecting Payton's "procedural" claim that the district court erred by not reconsidering its ruling on the *Brady* claim. *Payton v. Cullen*, 658 F.3d 890, 893, 895–96 (9th Cir. 2011). We again held that there was no prejudice, despite new evidence that Escalera had been working as a government agent on other matters. *Id.* at 895 ("We do not believe that disclosure [of the new evidence] makes it reasonably probable that the outcome would have been different."). The jury, we explained, had adequate information regarding Escalera's motives, and his testimony was cumulative of other evidence. *Id.* at 895–96. The judgment became final when we issued our mandate.

Payton has now filed the instant motion in the district court under Federal Rule of Civil Procedure 60(d)(3), alleging fraud on the court and seeking relief from the court's prior order denying habeas relief. The district court denied the motion and declined to grant a COA. Payton timely appealed.

II

We review the district court's denial of a Rule 60(d) motion for abuse of discretion. *See Buck v. Davis*, 137 S. Ct. 759, 777 (2017) (reviewing denial of Rule 60(b) motion for abuse of discretion); *Pizzuto v. Ramirez*, 783 F.3d 1171, 1175 (9th Cir. 2015) (same); *United States v. Estate of Stonehill*, 660 F.3d 415, 443 (9th Cir. 2011) ("In general, we review denials of motions to vacate for abuse of discretion."); *Superior Seafoods, Inc. v. Tyson Foods, Inc.*,

620 F.3d 873, 878–79 (8th Cir. 2010) (reviewing denial of Rule 60(d) motion for abuse of discretion, as it "would [not] be appropriate to afford less deference to the considered judgment of the presiding court in the context of a later-filed [Rule 60(d) motion] seeking the same type of relief [as a Rule 60(b) motion.]"). We review the district court's factual findings regarding Rule 60(d) motions for clear error. *See Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (reviewing denial of Rule 60(b) motion).

## III

We resolve the issues presented in this appeal as follows: Payton must first obtain a COA before we may entertain his appeal; but Payton is not entitled to a COA because he has not shown he meets the requirements for one. Accordingly, we leave undisturbed the district court order denying Payton's Rule 60(d) motion alleging fraud on the court.

## A

This case requires us to decide the threshold question whether the COA requirement applies in the Rule 60(d) context. We hold that it does.

### 1

State prisoners "seeking postconviction relief under 28 U.S.C. § 2254 ha[ve] no automatic right to appeal a district court's denial or dismissal of the petition." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also id.* at 337 ("AEDPA ha[s] placed more, rather than fewer, restrictions on the power of federal courts to grant writs of habeas corpus

to state prisoners.").**[6]** Rather, habeas petitioners "must first seek and obtain a COA." *Id.* at 327; *see also* Ninth Circuit Rule 22(b). The COA statute provides that "an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). Until a COA issues, we lack jurisdiction to rule on the merits of a habeas petitioner's appeal. *Miller-El*, 537 U.S. at 336.

The COA requirement serves a gatekeeping function. The Supreme Court has explained that, by enacting AEDPA's COA provisions, "Congress confirmed the necessity and the requirement of differential treatment for those appeals deserving of attention from those that plainly do not." *Id.* at 337; *cf. Barefoot v. Estelle*, 463 U.S. 880, 892 (1983), *superseded by* 28 U.S.C. § 2253, Pub. L. 104-132, title I, § 102, Apr. 24, 1996, 110 Stat. 1217, *as recognized in Slack v. McDaniel*, 529 U.S. 473 (2000) ("Congress established the requirement that a prisoner obtain a certificate of probable cause to appeal in order to prevent frivolous appeals from delaying the States' ability to impose sentences, including death sentences.").**[7]**

---

**[6]** The parties do not dispute that AEDPA applies. Payton filed his initial petition on May 3, 1996, after AEDPA's effective date.

**[7]** *Barefoot* considered a certificate of probable cause, "the predecessor analogue to the COA under the former version of section 2253 . . . ." *United States v. Winkles*, 795 F.3d 1134, 1139 (9th Cir. 2015).

2

Payton's motion apparently requests a COA on the issue of whether a COA is required.  But because this inquiry necessarily precedes the question of whether a COA should issue, we need not apply—and have not applied—the COA standard to this threshold issue.  *See, e.g.*, *Winkles*, 795 F.3d at 1139–42.

Rule 60(d)—which covers "other" powers of the court to grant relief from a final judgment or order—empowers courts to "set aside a judgment for fraud on the court."  Fed. R. Civ. P. 60(d)(3).  We already require a COA to appeal the denial of a Rule 60(b) motion.  *Winkles*, 795 F.3d at 1142.  Because our reasoning in the Rule 60(b) context applies equally in the Rule 60(d) context, we conclude that the COA requirement applies here too.

We held in *Winkles* that a COA is required to appeal the denial of a Rule 60(b) motion.**[8]**   795 F.3d at 1142.  Rule 60(b) permits "the court [to] relieve a party . . . from a final judgment, order, or proceeding" for various reasons, including "fraud . . . misrepresentation, or misconduct by an opposing party," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(3), (6); *see also Jones v. Ryan*, 733 F.3d 825, 833 (9th Cir. 2013) ("Rule 60(b) 'allows a party to seek relief from a final judgment, and request reopening of his

---

**[8]** *Winkles* considered a motion for relief from judgment arising from the denial of a section 2255 motion, but explained that—because section 2255 was intended to mirror section 2254 and the language is functionally identical—the analysis in section 2254 cases applied. 795 F.3d at 1141.  Since the two separate sections of the statute afford federal constitutional review of both state and federal convictions, the analysis in *Winkles* applies here, even though Payton seeks habeas relief under section 2254.

case, under a limited set of circumstances.'" (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005))).

In ruling that a COA was required, we distinguished *Harbison v. Bell*, which concluded that a COA is *not* required to appeal the district court's denial of a motion to expand the scope of counsel's representation to include state clemency proceedings. *Winkles*, 795 F.3d at 1141. *Harbison* explained that section 2253(c), AEDPA's COA provision, "governs final orders that dispose of the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the petitioner's detention." 556 U.S. at 183. "An order that merely denies a motion to enlarge the authority of appointed counsel," the Court reasoned, "is not such an order and is therefore not subject to the COA requirement." *Id.*; *see also Lambright v. Ryan*, 698 F.3d 808, 817 & n.2 (9th Cir. 2012) (noting that a COA is not required to appeal an order modifying a protective order in a habeas proceeding).

*Winkles* properly interpreted *Harbison* very narrowly. "[T]he order in *Harbison*," we explained, "did not pertain to the district court's adjudication of the habeas petition," as it did not, for example, "consider any alleged defects in the integrity of the proceedings arising out of the district court's adjudication of the petition." *Winkles*, 795 F.3d at 1142. By contrast, a "Rule 60(b) motion in the habeas context is one that 'attacks some defect in the integrity of the federal habeas proceedings.'" *Id.* at 1141 (quoting *United States v. Washington*, 653 F.3d 1057, 1060 (9th Cir. 2011)). We thus

required a COA to appeal the denial of a Rule 60(b) motion.**[9]** *Id.* at 1142.

Although we have not yet answered the "nearly identical" question whether a COA is needed to appeal the denial of a Rule 60(d) motion, other circuits have done so. *Torres v. United States*, 833 F.3d 164, 165 (2d Cir. 2016) (per curiam). The Second Circuit concluded that a COA is required to appeal the denial of a Rule 60(d) motion because "it would be inconsistent to apply the COA requirement in the Rule 60(b) context, but not the Rule 60(d) context." *Id.* "Rule 60(b) and Rule 60(d)," our sister circuit explained, "serve a similar purpose: to allow district courts, in appropriate circumstances, to grant relief from a judgment or final order." *Id.*; *see also Pizzuto*, 783 F.3d at 1180 ("[Rule] 60(d)(3) permits courts to set aside judgments for fraud on the court, and we have held that Rule 60(b)(6)'s 'extraordinary circumstances' doctrine encompasses the same acts.").**[10]**

---

**[9]** All circuits but the Fifth have reached the same conclusion, *see Winkles*, 795 F.3d at 1139, and the exception in the Fifth Circuit is very narrow, *Ochoa Canales v. Quarterman*, 507 F.3d 884, 888 (5th Cir. 2007) (per curiam). The Supreme Court, however, has expressly declined to address this issue. *See Gonzalez*, 545 U.S. at 535 & n.7 ("Many Courts of Appeals have construed 28 U.S.C. § 2253 to impose an additional limitation on appellate review by requiring a habeas petitioner to obtain a COA as a prerequisite to appealing the denial of a Rule 60(b) motion. . . . [W]e do not decide in this case whether this construction of § 2253 is correct. . . ."); *see also Buck*, 137 S. Ct. at 772.

**[10]** *See also Gregory v. Denham*, 623 F. App'x 932, 933 (10th Cir. 2015) (requiring a COA to appeal the denial of a Rule 60(d) motion); *Buck v. Thaler*, 452 F. App'x 423, 429 (5th Cir. 2011) (same); *United States v. Cooper*, 691 F. App'x 752 (4th Cir. 2017) (same).

Payton offers no principled basis for distinguishing between Rule 60(d) and Rule 60(b) for purposes of the COA requirement.  He claims that, "[w]hile Rule 60(b)(6) attacks the correctness of the district court's judgment, Rule 60(d)(3) challenges the integrity of the proceeding."  But this purported distinction is belied by *Winkles*, which explained that a COA is required to appeal an order "pertain[ing] to the district court's adjudication of the habeas petition." 795 F.3d at 1142.  That included orders that "touch on . . . any alleged defects in the integrity of the proceedings arising out of the district court's adjudication of the petition."  *Id.* Because Payton's Rule 60(d) motion attacks the integrity of the federal habeas proceedings, the reasoning in *Winkles* controls.[11]

Payton also identifies procedural differences between the sections[12] and argues that only Rule 60(d) functions to protect the public, but he does not explain how these distinctions warrant a disparate application of the COA requirement.  We therefore join the majority of circuits to conclude that Rule 60(d), like Rule 60(b), is subject to the COA requirement.

---

[11] Because Payton challenges the integrity of the federal habeas proceedings, we agree that his petition is not second or successive under 28 U.S.C. § 2244(b).  *See Winkles*, 795 F.3d at 1141 (discussing *Gonzalez*, 545 U.S. at 530–32).

[12] For example, a Rule 60(b)(3) motion alleging fraud must be filed within one year of the judgment, *see* Fed. R. Civ. P. 60(c)(1), whereas Rule 60(d)(3) "provides no time limit on courts' power to set aside judgments based on a finding of fraud on the court," *Stonehill*, 660 F.3d at 443.

## B

Because Payton must obtain a COA before we can address his Rule 60(d) motion, we next decide whether he is entitled to one.  We conclude that he is not.

### 1

Under AEDPA, a COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When the district court dismisses on procedural grounds, as is the case here, we apply a two-step inquiry, issuing a COA if the petitioner shows that (1) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling," and (2) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right."  *Slack*, 529 U.S. at 484–85; *see also Winkles*, 795 F.3d at 1143.  Both components must be met before we may entertain the appeal.  *Slack*, 529 U.S. at 484–85.

We are mindful that the Supreme Court has emphasized the limited nature of this inquiry:

> The COA inquiry . . . is not coextensive with a merits analysis.  At the COA stage, the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.  This threshold question should be decided without full consideration of the factual or legal bases adduced in support of the claims.  When a

court of appeals sidesteps the COA process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.

*Buck*, 137 S. Ct. at 773 (citations and internal quotations omitted). The Court therefore held that the court of appeals erred by denying a COA on a Rule 60(b) motion by first determining the merits, and thus "invert[ing] the statutory order of operations." *Id.* at 774; *see also Tharpe v. Sellers*, 138 S. Ct. 545, 546–47 (2018).

2

Considering the Supreme Court's guidance in *Buck*, we nevertheless hold that Payton is not entitled to a COA. Payton has had more than adequate opportunity to attack the informant testimony against him and he has lost multiple constitutional challenges to the evidence supporting his conviction and sentence. We conclude that reasonable jurists viewing the evidence submitted in support of Payton's Rule 60(d) motion could not disagree whether a COA should issue to challenge the district court's exercise of discretion in denying the motion. *See Slack*, 529 U.S. at 484–85; *cf. Winkles*, 795 F.3d at 1143 ("[T]he COA test for appeal of the denial of a Rule 60(b) motion should coincide with the standard of review the court will apply during the appeal. Here, that standard of review is abuse of discretion.").

Payton disputes the district court's ruling that fraud on the court cannot be based on recklessness, citing the Sixth Circuit's contrary holding in *Johnson v. Bell*, 605 F.3d 333, 339 (6th Cir. 2010). *See Allen v. Ornoski*, 435 F.3d 946, 951 (9th Cir. 2006) ("[A] constitutional claim is debatable if

another circuit has issued a conflicting ruling," even if the question "is well-settled in our circuit"). Also potentially debatable is whether fraud on the court can ever arise from a state prosecutor's sworn statements in federal habeas proceedings—an issue the district court resolved in the State's favor and which the parties dispute on appeal. *See Clark v. Astrue*, 529 F.3d 1211, 1214 (9th Cir. 2008) ("The district court abuses its discretion if it does not apply the correct legal standard . . . ."). Beyond debate, however, is that even if Payton could demonstrate fraud on the court, Payton's petition ultimately fails to state a valid claim of the denial of a constitutional right because we have already determined that the informants' testimony was not material in light of the overwhelming evidence of Payton's guilt.**[13]**

The crux of Payton's fraud on the court claim is that Michael Jacobs, then an Orange County Deputy District Attorney, made false sworn statements during the federal habeas proceedings to secure summary judgment of Payton's *Brady* and *Massiah* claims. Payton further asserts that Jacobs's alleged false statements comprised part of a greater scheme by the Orange County District Attorney's Office ("OCDA") and Orange County Sheriff's Department ("OCSD") to conceal and suppress evidence concerning government informants. The new evidence Payton brought before the district court included the Orange County Superior Court's rulings in the *Dekraai* matter**[14]** concluding

---

**[13]** Thus, this is not a case like *Buck*, where the underlying merits of the petitioner's claim of ineffective assistance of counsel were debatable. *See Buck*, 137 S. Ct. at 773–77.

**[14]** *People v. Dekraai*, Orange County Superior Ct. Case No. 12ZF0128.

that the OCSD maintained and concealed a database documenting informant-related information.  Payton also presented correspondence between the OCDA and the California Office of the Attorney General which he asserts shows that Jacobs—and by extension, the Attorney General's Office—committed *Brady* violations and lied about them during the federal habeas proceedings.**[15]**

In order to succeed on his underlying *Brady* and *Massiah* claims, Payton must establish prejudice.  *See United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) ("To establish a *Brady* violation, the evidence must be . . . material or prejudicial."); *United States v. Bagley*, 641 F.2d 1235, 1238 (9th Cir. 1981) ("[T]o establish a violation of *Massiah* defendant must show that he suffered prejudice at trial as a result of evidence obtained from interrogation outside the presence of counsel.").  As discussed above, we have already held that the informants' testimony was not material in this case given the overwhelming evidence of Payton's guilt. *See, e.g.*, *Payton v. Cullen*, 658 F.3d at 896 ("[T]here was no reasonable doubt that Payton did have a severe problem with women and had stabbed and raped Montgomery and stabbed Pensinger. . . .   In sum, considering the entire record, our confidence in the outcome is not undermined."); *Payton v. Woodford*, 258 F.3d at 921 ("Nor would further

---

**[15]** Payton also points to other new evidence:   inmate Mark Cleveland's declaration and Jacobs's use of informants in Thomas Thompson's capital case.  But the Cleveland Declaration is duplicative of information in the 2006 Escalera proffer, which this court explicitly addressed in *Payton v. Cullen*, 658 F.3d at 895–96.  And information about the use of informants in a separate case sheds no light on the materiality of the evidence presented by the informants in Payton's case.

impeachment have any reasonable probability of producing a different outcome.").[16]

Payton's admissions to the jailhouse informants, later recounted to the jury, were relatively insignificant in the face of direct eyewitness testimony from the two surviving victims, corroborated by the forensic evidence linking his semen and the victim's blood, as well as Payton's ex-girlfriend's penalty-stage testimony regarding the similar attack she endured at his hands.  Taking only an "initial peek," *Winkles*, 795 F.3d at 1143, as we must, we determine that no reasonable jurist could conclude the informant reliability and prosecutorial misconduct issues presented by Payton in his Rule 60(d) motion are "adequate to deserve encouragement to proceed further," *Buck*, 137 S. Ct. at 773 (citation and internal quotations omitted).  To the contrary, Payton cannot prevail on those claims because—regardless of how the prosecution obtained the informants' testimony or later explained its tactics to the district court—we have already determined that the evidence itself was not material to Payton's conviction and sentence.

---

[16] Here, our "prior decision[s] . . . [were] published . . . and became the law of the circuit."  *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1076–77 (9th Cir. 2012); *see also Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) ("[O]ur general 'law of the circuit' rule" is "that a published decision of this court constitutes binding authority which 'must be followed unless and until overruled by a body competent to do so.'" (quoting *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001))).  We are therefore bound by those opinions.  *See Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002) ("[W]e have no discretion to depart from precedential aspects of our prior decision . . . under the general law-of-the-circuit rule.").

IV

We conclude that a COA is required to appeal the denial of a Rule 60(d) motion for relief from judgment arising from the denial of a section 2254 motion. We deny Payton's motion for a COA, and leave undisturbed the district court's orders denying Payton's Rule 60(d) motion and motion for reconsideration.

**Certificate of Appealability DENIED.**