**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL B. BYNOE,
     *Petitioner-Appellant*,

    v.

ISIDRO BACA, Warden; ATTORNEY
GENERAL FOR THE STATE OF
NEVADA,
    *Respondents-Appellees.*

No. 17-17012

D.C. No.
3:07-cv-00009-
LRH-VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted July 17, 2019
San Francisco, California

Filed July 24, 2020

Before: Michael R. Murphy,* Richard A. Paez, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Paez;
Dissent by Judge Rawlinson

---

 * The Honorable Michael R. Murphy, United States Circuit Judge
for the U.S. Court of Appeals for the Tenth Circuit, sitting by
designation.

# SUMMARY[**]

## Habeas Corpus / Fed. R. Civ. P. 60(b)

The panel reversed the district court's denial of Michael Bynoe's motion pursuant to Fed. R. Civ. P. 60(b)(6) to reopen proceedings on his habeas corpus petition seeking to invalidate his plea of guilty but mentally ill to lewdness with a child under the age of fourteen, and remanded for further proceedings.

Bynoe entered the "guilty but mentally ill" plea, which subjected defendants to the same panoply of punishment as defendants who pleaded guilty or were found guilty after trial, during the short-lived period in which the Nevada state legislature replaced the insanity defense with the "guilty but mentally ill" plea. After the insanity plea was reinstated, Bynoe—without having exhausted any of his claims in state court—sought to invalidate his guilty plea by filing a habeas petition in federal district court. The district court denied Bynoe's request for a stay and dismissed the petition, interpreting this court's case law at the time to require the dismissal of habeas petitions consisting only of unexhausted claims. In *Mena v. Long*, 813 F.3d 907 (9th Cir. 2016), this court later clarified that district courts can indeed stay and abey entirely unexhausted habeas petitions. Following this change in law, Bynoe moved to reopen his habeas proceeding under Rule 60(b)(6) so the district court could reconsider his request for a stay while he presented his claims in state court. The district court denied the motion to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

reopen, concluding that Bynoe's claim was not timely and that he failed to present extraordinary circumstances justifying relief.

The panel held:

- Bynoe's motion was properly filed under Rule 60(b)(6) rather than any of Rule 60(b)'s other grounds for relief.

- The motion, which was filed less than seven months after this court decided *Mena* and only two months after Bynoe was appointed counsel, was timely.

- The motion presented extraordinary circumstances warranting re-opening the final judgment, as the six factors set forth in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009)—the nature of the legal change, diligence in pursuing reconsideration, the parties' reliance interest in finality, the delay between finality of the judgment and the Rule 60(b)(6) motion, the relationship between the change in law and the challenged judgment, and concerns of comity—support reconsidering the final judgment.

The panel wrote that on remand Bynoe may request the district court to stay his petition while he returns to state court to exhaust his federal constitutional claims.

Judge Rawlinson dissented because, in her view, the majority does not adhere to the applicable standard of review, abuse of discretion.

## COUNSEL

Jeremy C. Baron (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Petitioner-Appellant.

Natasha Mary Gebrael (argued); Erin L. Bittick, Deputy Attorney General; Aaron D. Ford, Attorney General; Office of the Attorney General, Las Vegas, Nevada; for Respondents-Appellees.

## OPINION

PAEZ, Circuit Judge:

In 1995, the Nevada State Legislature replaced the insanity defense with a "guilty but mentally ill" plea. *See* 1995 Nev. Stat. 2248–49. Pleading not guilty by reason of insanity instead of guilty but mentally ill had important practical consequences. Defendants who were found not guilty by reason of insanity were entirely acquitted of the crimes with which they were charged, while defendants who pleaded guilty but mentally ill were subject to the same panoply of punishment as defendants who pleaded guilty or were found guilty after trial.

Six years later, the Nevada Supreme Court reinstated the insanity defense. *See Finger v. State of Nevada*, 27 P.3d 66, 68 (Nev. 2001) (en banc). The court concluded that the principle of legal insanity is so "well-established" and "fundamental" that its abolishment violated the due process

clauses of the Nevada and United States constitutions.[1] *Id.* at 84. The Legislature responded by restoring the insanity defense and abolishing the guilty-but-mentally-ill plea. *See* Nev. Rev. Stat. § 174.035(4) (2003).

Michael Bynoe was one of the defendants who pleaded guilty but mentally ill during the short-lived period in which the plea was available in Nevada. After the insanity plea was reinstated, he sought to invalidate his guilty plea by filing a habeas petition in federal district court. At the time he filed his petition, he had failed to first exhaust any of his claims in state court. The court denied Bynoe's request for a stay and dismissed the petition, interpreting our caselaw at the time to require the dismissal of habeas petitions consisting only of unexhausted claims. *See Bynoe v. Helling* (*Bynoe I*), No. 3:07-cv-0009, 2009 WL 3060372, at *2 (D. Nev. Sept. 23, 2009). In an unrelated case, we later clarified that district courts can indeed stay and abey entirely unexhausted habeas petitions. *See Mena v. Long*, 813 F.3d 907 (9th Cir. 2016).

Following this change in law, Bynoe moved to reopen his habeas proceeding under Federal Rule of Civil Procedure 60(b)(6) so the district court could reconsider his request for a stay while he presented his claims in state court. The court denied his motion to reopen, concluding that Bynoe's claim was not timely and he had failed to present extraordinary circumstances justifying relief. *See Bynoe v. Helling* (*Bynoe II*), No. 3:07-cv-0009, 2017 WL 4079263, at *5 (D. Nev.

---

[1] The Supreme Court recently held that the due process clause of the U.S. Constitution does not require states to maintain an insanity defense that "acquits a defendant who could not 'distinguish right from wrong' when committing his crime[.]" *Kahler v. Kansas*, 140 S. Ct. 1021, 1027 (2020). We express no views on whether *Kahler* affects Bynoe's claims.

Sept. 6, 2017); *see also* Fed. R. Civ. P. 60(b)(6), (c)(1). We reverse and remand for further proceedings.

## I.

### A.

Three years after Nevada eliminated the insanity defense, Bynoe was charged with one count of sexual assault on a child and one count of lewdness with a child under the age of fourteen. The court initially determined Bynoe was not competent to stand trial and ordered him transferred to a psychiatric facility for evaluation and treatment. After his competency was restored, he pleaded guilty but mentally ill to a lesser offense of lewdness with a child under the age of fourteen in exchange for the state's agreement not to pursue the original sexual assault charge.

At his sentencing hearing, the court found Bynoe was mentally ill at the time of the offense and at the time of sentencing, accepted his plea, and sentenced him to life imprisonment with eligibility for parole after he served a minimum of ten years.

### B.

Bynoe's lengthy procedural journey through the Nevada and federal courts began a few months after he was sentenced. He began filing motions in state and federal court, challenging the propriety of his sentence and conviction. While his initial objections were pending, the Nevada Supreme Court held that the legislature's abolition of the insanity defense violated defendants' due process rights under the United States and Nevada Constitutions. *See Finger*, 27 P.3d at 86.

In 2007, Bynoe filed a pro se habeas petition in federal district court. He alleged that his federal due process rights were violated when he was barred from pleading not guilty by reason of insanity. The court appointed him counsel, and he filed an amended petition. Three out of the four grounds for relief in the amended petition turned on Nevada's unconstitutional decision to abolish the insanity defense. After reviewing the petition, the court ordered Bynoe to show cause why the petition should not be dismissed for lack of exhaustion.

In order to proceed with a federal habeas petition, petitioners must first exhaust their state-court remedies. *See Anthony v. Cambra*, 236 F.3d 568, 573–74 (9th Cir. 2000). In *Rose v. Lundy*, 455 U.S. 509 (1982), the Supreme Court held that district courts were required to dismiss "mixed" habeas petitions—petitions that contain both unexhausted and exhausted claims—in their entirety. *Id.* at 510.

Although dismissals of mixed petitions are technically without prejudice, the enactment of Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") made it difficult for petitioners to return to federal court with a timely petition. AEDPA imposes a one-year statute of limitations on the filing of a federal petition, *see* 28 U.S.C. § 2244(d)(1), and filing a federal petition does not toll the statute of limitations, *see Duncan v. Walker*, 533 U.S. 167, 181–82 (2001). Thus, petitioners who filed mixed petitions late in the limitations period could fall outside the one-year window by the time they finished exhausting their state-court remedies and returned to federal court. Together, the one-year time limit and *Lundy*'s complete-dismissal requirement heightened the risk that petitioners who filed a mixed petition toward the end of the limitations period

would lose the chance for federal review of their claims. *Dixon v. Baker*, 847 F.3d 714, 719 (9th Cir. 2017).

Recognizing "the gravity of this problem and the difficulty it [] posed for petitioners and federal district courts alike," the Supreme Court introduced an exception to the complete-dismissal requirement in *Rhines v. Weber*, 544 U.S. 269, 277 (2005). Under *Rhines*, a federal district court may stay the mixed petition and allow the petitioner to return to state court to litigate the unexhausted claims. *See Jackson v. Roe*, 425 F.3d 654, 660 (9th Cir. 2005). Stay-and-abeyance under *Rhines* is appropriate only where the court determines "there was good cause for the petitioner's failure to exhaust his claims first in state court."[2] *Rhines*, 544 U.S. at 277.

In response to the district court's exhaustion concerns, Bynoe moved for a stay of his federal habeas proceeding under *Rhines*. The court denied Bynoe's stay motion because his petition contained only unexhausted claims. Bynoe requested a certificate of appealability, which the district court denied. He requested the same from this court,

---

[2] Before *Rhines*, district courts in the Ninth Circuit could (1) dismiss a mixed petition without prejudice so the petitioner could refile after exhausting the unexhausted claims; (2) dismiss the unexhausted claims and proceed only with the exhausted claims; or (3) dismiss the unexhausted claims, stay the remaining claims until the unexhausted claims were fully exhausted, and allow the petitioner to amend the petition to add the newly exhausted claims that related back to the original petition. *See King v. Ryan*, 564 F.3d 1133, 1135, 1139 (9th Cir. 2009); *see also Pliler v. Ford*, 542 U.S. 225, 230–31 (2004). As we noted in *Mena*, *Rhines* altered the total-exhaustion requirement. *See* 813 F.3d. at 910–11; *see also King*, 564 F.3d at 1140 ("When implemented, the *Rhines* exception eliminates entirely any limitations issue with regard to the originally exhausted claims, as the claims remain pending in federal court throughout.").

which we also denied.  Bynoe then petitioned for a writ of certiorari from the Supreme Court, which was denied in 2011.

## C.

Years after Bynoe's stay request was denied, we settled the law governing the applicability of a *Rhines* stay to an entirely unexhausted petition.  In *Mena*, we held that district courts may grant a *Rhines* stay of a petition containing only unexhausted claims.  813 F.3d at 912.  Reasoning that "the distinctions between mixed petitions and fully unexhausted petitions" are not "sufficiently meaningful to warrant different treatment," we determined that "[d]enying stays to all petitioners with fully unexhausted petitions . . . creates a needlessly overbroad rule."  *Id.* at 911.

About seven months after our decision in *Mena*, Bynoe filed a motion under Federal Rule of Civil Procedure 60(b)(6), seeking to reopen his federal habeas proceeding so he could renew his request for a stay under *Rhines* and *Mena*. The district court denied Bynoe's motion to reopen, explaining that seven years had passed since the court had originally entered judgment and it was not "reasonable and warranted to reopen this case after so many years."  *Bynoe II*, 2017 WL 4079263, at *3.

Bynoe timely appealed.  We have jurisdiction to review Bynoe's appeal pursuant to 28 U.S.C. §§ 1291 and 2253. We review for abuse of discretion a district court's decision to deny a Rule 60(b)(6) motion, and review de novo any questions of law underlying that decision.  *See Lal v. California*, 610 F.3d 518, 523 (9th Cir. 2010).

**II.**

Bynoe seeks relief under Rule 60(b), which permits litigants to request reconsideration of a final judgment, order, or proceeding entered against them. The Rule lists five circumstances that may justify reopening a final judgment—including, for example, newly discovered evidence, fraud by the opposing party, or a mistake committed by the court—and a sixth, catch-all category. The sixth ground for relief allows a court to reconsider a final judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).

A party seeking relief under Rule 60(b)(6) must satisfy three requirements. The motion cannot be premised on another ground delineated in the Rule, s*ee Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988); it must be filed "within a reasonable time," *see* Fed. R. Civ. P. 60(c)(1); and it must demonstrate "extraordinary circumstances" justifying reopening the judgment, *see Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 393 (1993). Extraordinary circumstances occur where there are "other compelling reasons" for opening the judgment. *Klapprott v. United States*, 335 U.S. 601, 613 (1949). Bynoe's Rule 60(b)(6) motion satisfies all three.

**A.**

Bynoe's motion was properly filed under Rule 60(b)(6) rather than any of Rule 60(b)'s other grounds for relief. The basis of his motion is *Mena*'s change in the complete-exhaustion rule; his case does not involve a mistake by the court, newly discovered evidence, fraud, and he does not challenge the validity or satisfaction of the judgment. *See* Fed. R Civ. P. 60(b)(1)–(5). A Rule 60(b) motion that

attacks some procedural "defect in the integrity of the federal habeas proceedings" may be a reason that "justifies relief" under Rule 60(b)(6).**[3]** *Gonzalez*, 545 U.S. at 532; *see also Phelps v. Alameida*, 569 F.3d 1120, 1131–34 (9th Cir. 2009).

## B.

Unlike a motion under Rule 60(b)(1), (2), or (3), a timely 60(b)(6) motion does not need to be filed within one year after the "final judgment, order, or proceeding." *See* Fed. R. Civ. P. 60(b), (c)(1). A party who seeks relief under Rule 60(b)(6) must act only within a "reasonable time." Fed. R. Civ. P. 60(c)(1). The flexibility embedded in Rule 60(b)(6)'s timing requirement preserves its purpose as a "grand reservoir of equitable power," available as a vehicle for "vacat[ing] judgments whenever such action is appropriate to accomplish justice." *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) (internal quotation marks omitted).

The timeliness of a Rule 60(b) motion is generally measured by reference to the date of the final judgment, order, or proceeding. *See, e.g.*, *Lemoge v. United States*, 587 F.3d 1188, 1197 (9th Cir. 2009). But where a change in law is the basis for the motion, the date of the challenged order provides little guidance in measuring its timeliness; valid grounds for reconsideration may arise long after a final judgment has been entered. When a Rule 60(b)(6) motion is premised on a change in law, courts measure timeliness "as

---

**[3]** In the habeas context, a Rule 60(b) motion applies only to the extent it is not inconsistent with AEDPA. It cannot be used as a vehicle for raising a second or successive habeas petition as prescribed in 28 U.S.C. § 2244. *See Gonzalez v. Crosby*, 545 U.S. 524, 529–30 (2005). The basis of Bynoe's motion is a change in procedural law; he neither raises a new claim for habeas relief nor challenges previous decisions on the substance of his claims.

of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment." *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir. 2017) (internal quotation marks omitted); *see also Miller v. Mays*, 879 F.3d 691, 699 (6th Cir. 2018).

To evaluate whether a party's delay in filing a Rule 60(b) motion was reasonable, we consider the party's ability to learn earlier of the grounds relied upon, the reason for the delay, the parties' interests in the finality of the judgment, and any prejudice caused to parties by the delay. *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981).

Our holding in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009), is instructive. One year and fifteen days after the California Supreme Court summarily denied his state habeas petition, Phelps filed a federal habeas petition under 28 U.S.C. § 2254. *Id.* at 1125. Under the California Rules of Court in force at the time, a "decision" of the state supreme court became final thirty days after filing, but an "order" of the court denying a petition for review became final at the time of filing. *Id.* AEDPA's statute of limitations is one year, so if the summary denial was a "decision," not an "order," then Phelps had filed his initial petition late. *Id.* at 1126–27. The district court noted that "California courts ha[d] not clearly articulated the difference between a *decision* and an *order* in the context" of the relevant rule, but agreed with the government that the denial of review was an order, and dismissed Phelps's petition as untimely. *Id.* at 1126. Phelps appealed, and we affirmed the district court. *Id.*

At the time Phelps appealed, the question of how to construe such denials for purposes of AEDPA was "an open one." *Id.* Fifteen months after Phelps's appeal became final,

we settled the law and held that summary denials by the California Supreme Court were "orders." *Id*; *see Bunney v. Mitchell*, 262 F.3d 973, 974 (9th Cir. 2001) (per curiam). Phelps then filed a Rule 60(b)(6) motion, asking the district court to reconsider the denial of his petition because of the intervening change in law. *Phelps*, 569 F.3d at 1127. The district court concluded the motion was a successive habeas petition and denied the motion. *Id.* We dismissed Phelps's appeal. *Id.* at 1127–28.

Eleven months later, the Supreme Court held in *Gonzalez* that a Rule 60(b) motion that challenges a district court's ruling on the AEDPA statute of limitations is not a successive petition. *See* 545 U.S. at 535–36. Ten months after the Supreme Court issued *Gonzalez*—and six years after his initial habeas petition had been dismissed—Phelps filed his second Rule 60(b) motion. *Phelps*, 569 F.3d at 1126–27, 1137–38 & n.21. The district court again refused to reconsider its dismissal and again denied a certificate of appealability. *Id.* at 1128–29. We initially denied his petition for a certificate of appealability, but eventually granted it to address only whether the inconsistent application of rules governing finality from habeas decisions by the California Supreme Court warranted relief under Rule 60(b)(6). *Id.* at 1129.

Finally addressing the merits of Phelps's Rule 60(b) motion, we held that it had been timely filed. *Id.* at 1129–31. Noting that he had prepared his motion without counsel, writing from his prison cell, we could not "imagine a more sterling example of diligence" than Phelps had exhibited. *Id.* at 1137. We further concluded that Phelps could not be faulted for the six years that had passed since he filed his initial habeas petition; his first motion had been incorrectly dismissed as a successive habeas petition, the government's

interests in the finality of an erroneous procedural judgment were minor, and the delay prejudiced neither party. *See id.* at 1137–39; *see also, e.g., Jones v. Ryan*, 733 F.3d 825, 839 (9th Cir. 2013) (holding that the petitioner's seventeen-month delay carried "little weight"); *Ritter v. Smith*, 811 F.2d 1398, 1402 (11th Cir. 1987) (describing a motion for reconsideration filed nine months after the judgment became final as a "brief delay"); *Thompson v. Bell*, 580 F.3d 423, 443–44 (6th Cir. 2010) (concluding that a four-year delay in filing a 60(b)(6) motion premised on a change in law was timely in light of the petitioner's diligence). We thus reversed the district court's denial of Phelps's Rule 60(b)(6) motion.

Bynoe sought relief less than seven months after we decided *Mena*. *Mena* provided the basis for his motion to reopen his habeas proceeding so that he could seek a stay under *Rhines.* Any "delay" prior to *Mena* is irrelevant, because the basis for Bynoe's Rule 60(b)(6) motion did not yet exist. *See Ashford*, 657 F.2d at 1054. A seven-month delay is well within the timeframe considered by *Phelps* and the presumptive one-year timeframe suggested by the Rule.

Notably, the motion was also filed only two months after Bynoe was appointed counsel. In July 2015, Bynoe filed a new habeas petition in the district court, and the Office of the Federal Public Defender filed a motion for appointment of counsel at the end of July 2016, five months after *Mena*. The court granted the motion and ordered Bynoe to file an amended petition within sixty days. In response, Bynoe's attorney filed the Rule 60(b)(6) motion and requested a stay of the new federal case. These events underscore the consequences of Bynoe's "lack of resources and legal training," and his inability to learn of the grounds raised in his Rule 60(b)(6) motion without counsel. *See Foley v.*

*Biter*, 793 F.3d 998, 1004 (9th Cir. 2015). Bynoe was diligent in filing his motion and, as we explain later, the prejudice suffered by Nevada in this context is minimal.

We hold that Bynoe's Rule 60(b) motion was timely.

## C.

We turn to whether there are "extraordinary circumstances necessary to grant relief." *Phelps*, 569 F.3d at 1140. The extraordinary-circumstances requirement was first introduced—albeit, likely unintentionally—in 1949, the year after amended Rule 60(b) became effective. Prior to the amendment of Rule 60, courts were unduly constrained in their authority to revisit final judgments.[4] The original Rule 60(b) permitted reconsideration of a judgment only on specific grounds made within a strict, six-month time limit. *See* Fed. R. Civ. P. 60(b) (1938). Often unable to rely on the text of the rule for granting relief, courts began to craft innovative interpretations of the rule, extending the six-month period during which they could grant post-judgment relief or relying on their inherent powers to revisit a final judgment. *See, e.g., Schram v. O'Connor*, 2 F.R.D. 192, 194–95 (E.D. Mich. 1941); *Preveden v. Hahn*, 36 F. Supp. 952, 953 (S.D.N.Y. 1941). In response, Rule 60(b) was broadened, the time limits were expanded, and the catch-all provision was added.[5]

---

[4] *See* Note, Federal Rule 60(b): Relief from Civil Judgments, 61 Yale L.J. 76, 77–78 (1952).

[5] *See* Scott Dodson, Rethinking Extraordinary Circumstances, 106 Nw. L. Rev. Colloquy 111, 111–14 (2011–2012); Mary Kay Kane, Relief From Federal Judgments: A Morass Unrelieved by a Rule, 30

The Supreme Court addressed the newly amended rule for the first time in *Klapprott v. United States*, 335 U.S. 601 (1949).  It considered whether the district court erred in denying a Rule 60(b)(6) motion seeking to set aside a default judgment depriving the petitioner of his citizenship.  *Id.* at 601, 613.  The default judgment had been entered against the petitioner because he had been "in jail . . . , weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one, disturbed and fully occupied in efforts to protect himself against the gravest criminal charges."  *Id.* at 614.  Although four years had passed since the judgment had been entered, the Court held that relief under amended Rule 60(b)(6) was appropriate because the events leading to the default judgment far exceeded the "excusable neglect" standard in Rule 60(b)(1); his "extraordinary situation" could not "fairly or logically be classified as mere 'neglect' on his part."  *Id.* at 613.

The following year, the Court described *Klapprott* as "a case of extraordinary circumstances," *Ackermann v. United States*, 340 U.S. 193, 199 (1950), and denied Rule 60(b)(6) relief in a similar denaturalization case.  Even if the district court had erred in its judgment, the Court explained, the petitioner had "made a considered choice not to appeal," and could not "be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong."  *Id.* at 198.  *Ackermann*, and decisions that followed it, solidified Rule 60(b)(6)'s extra-textual requirement that a movant demonstrate a compelling justification for failing to raise the basis for the motion during the pendency of the case.  *See, e.g., Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th

Hasting L. J. 41, 41–47 (1978); *see also* 11C Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2851 (3d ed.).

Cir. 1971) (per curiam) ("In order to bring himself within the limited area of Rule 60(b)(6) a petitioner is required to establish the existence of extraordinary circumstances which prevented or rendered him unable to prosecute an appeal.").

A "clear and authoritative" change in the law governing the judgment in a petitioner's case may present extraordinary circumstances. *See Polites v. United States*, 364 U.S. 426, 433 (1960). Federal courts have considered a variety of factors to evaluate whether the context of the change and its consequences are sufficiently extraordinary. A relevant alteration to constitutional rights, for example, may be sufficient, *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750–51 (6th Cir. 2013), but a narrow change in peripheral law is "rarely" enough, *Satterfield v. Dist. Attorney Phil.*, 872 F.3d 152, 160 (3d Cir. 2017); *see also Mitchell v. United States*, 958 F.3d 775, 790–91 (9th Cir. 2020). Courts also consider the prejudice caused to other parties, including the state's interest in the finality of the judgment and "the risk of undermining the public's confidence in the judicial process." *Liljeberg*, 486 U.S. at 863–64. The context and nature of the injustice borne by the petitioner absent a re-opening of the judgment is also relevant. *See, e.g., Buck v. Davis*, 137 S. Ct. 759, 778–79 (2017).

For Rule 60(b)(6) motions premised on post-judgment changes in law, we have distilled the extraordinary-circumstances requirement into six factors, considered flexibly and in their totality. We examine (1) the nature of the legal change, including whether the change in law resolved an unsettled legal question; (2) whether the movant exercised diligence in pursuing reconsideration of his or her claim; (3) the parties' reliance interests in the finality of the judgment; (4) the delay between the finality of the judgment

and the Rule 60(b)(6) motion; (5) the relationship between the change in law and the challenged judgment; and (6) whether there are concerns of comity that would be disturbed by reopening a case. *See Phelps*, 569 F.3d at 1134–40; *Hall*, 861 F.3d at 987–88. We address each factor in turn, without "suggest[ing] that they impose a rigid or exhaustive checklist." *Phelps*, 569 F.3d at 1135.

## 1.

We first consider the nature of the intervening law. *See Lopez v. Ryan*, 678 F.3d 1131, 1135–36 (9th Cir. 2012). A change in law "does not always supply sufficient conditions for granting" a Rule 60(b)(6) motion. *Riley v. Filson*, 933 F.3d 1068, 1071 (9th Cir. 2019). A dismissal of a petition based on an accurate application of then-settled law—even after the Supreme Court overrules such precedent—is "hardly extraordinary." *Gonzalez*, 545 U.S. at 536. But the resolution of *unsettled* law, *see Phelps*, 569 F.3d at 1135–36, or a "remarkable—if limited" development in relevant settled law may present extraordinary circumstances, *Lopez*, 678 F.3d at 1136 (internal quotation marks omitted).

Bynoe's motion is predicated upon *Mena*'s resolution of an outstanding habeas question. Before *Mena*, *Rhines* held that district courts may, in certain circumstances, stay a mixed habeas petition while the petitioner exhausted his federal claims in state court. 544 U.S. at 275–77. The Court left open whether stay-and-abeyance extended to habeas petitions consisting solely of unexhausted claims. Acknowledging this uncertainty, we initially declined to read *Rhines* to authorize stays of entirely unexhausted petitions. *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006). District courts faced with such petitions could "simply dismiss the habeas petition for failure to exhaust,"

without addressing whether *Rhines* applied. *Id.* (citing *Jiminez v. Rice*, 276 F.3d 478, 481 (9th Cir. 2001)).

In *Mena*, we recognized that we had not yet "addressed in our circuit whether such a stay-and-abeyance procedure is available when a petition is fully unexhausted, not mixed." 813 F.3d at 910. Analyzing the Supreme Court's limited guidance on the issue, we—like three circuits before us[6]—answered the question in the affirmative.

Despite *Mena*'s recognition of and answer to the open question, the district court explained it remained "unclear" whether *Mena* "should be viewed as a subsequent change in the law that affected an unsettled area of law." *Bynoe I*, 2017 WL 4079263, at *3. The court found that *Mena*'s acknowledgement of the issue was not dispositive because we had previously denied Bynoe a certificate of appealability on the same issue in an unpublished order. *Id.* Relying on that order, the court concluded the denial of the certificate "suggest[ed] that reasonable jurists . . . would not have debated the conclusion that district courts could not stay fully unexhausted petitions." *Id.*

Unsettled legal questions are sometimes difficult to detect, not obvious until presented by the right facts and circumstances. This was not such a case: *Mena* resolved an unanswered question of law, and it explicitly acknowledged doing so. *See* 813 F.3d at 910. Despite the district court's suggestion to the contrary, unpublished dispositions—like our denial of Bynoe's certificate of appealability—do not settle questions of law. *See Phelps*, 569 F.3d at 1126–27.

---

[6] *See Doe v. Jones*, 762 F.3d 1174, 1174 (10th Cir. 2014); *Heleva v. Brooks*, 581 F.3d 187, 191 (3d Cir. 2009); *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006).

The district court abused its discretion by relying on the unpublished order in light of *Mena*'s own jurisprudential characterization. This factor weighs in Bynoe's favor.

**2.**

The second factor considers whether the petitioner exhibited sufficient diligence in advancing his claim. The diligence analysis overlaps significantly with the timeliness requirement in Rule 60(b); a petitioner who has filed his motion within a "reasonable time" under the Rule has diligently pursued his claim. *See, e.g., Jones*, 733 F.3d at 839 (analyzing diligence by reference to the petitioner's delay in filing his Rule 60(b)(6) motion); *Hall*, 861 F.3d at 987–88 (evaluating diligence and timeliness together); *see also Miller*, 879 F.3d at 699 (explaining that the timeliness of a Rule 60(b)(6) motion is measured by "considering a petitioner's diligence in seeking relief").

Diligence may also be measured by reference to the petitioner's urgency in litigating his claim. In *Gonzalez*, the Court concluded the petitioner had failed to diligently pursue his habeas claim because he did not petition for rehearing after his certificate of appealability was denied by the Eleventh Circuit. 545 U.S. at 537. We distinguished the diligence of the petitioner in *Phelps* from *Gonzalez* because Phelps had appealed the denial of his petition to the Supreme Court and filed a Rule 60(b) motion within a year of the relevant change in procedural law. 569 F.3d at 1136–37. Phelps had also repeatedly sought to have various claims reviewed over the course of a decade, often without the assistance of counsel. *Id*. at 1137.

Bynoe, like Phelps, diligently pursued his present claim. He filed his Rule 60(b) motion within a "reasonable time" and promptly sought a certificate of appealability from both

the lower court and this court on the issue. Often proceeding pro se, he exhibited the "effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Brooks v. Yates*, 818 F.3d 532, 535 (9th Cir. 2016) (internal quotation marks omitted).

Petitioners are not required to file repeated, meritless habeas petitions or motions to demonstrate diligence, but Bynoe also fully pursued each of his pre-*Mena* petitions. He began litigating the propriety of his guilty plea shortly after he was sentenced, filing letters and motions with the Nevada Supreme Court and trial court without the assistance of counsel. He raised the exhaustion issue six years before *Mena*, correctly arguing that his unexhausted petition should be eligible for a *Rhines* stay. After he lost that argument, he sought a certificate appealability on the question, and when that was denied, he sought a certificate from this court. Once that was denied, he filed a certiorari petition with the Supreme Court—but that too was denied. At no point did Bynoe fail to exercise an appellate right available to him. This factor weighs in Bynoe's favor.

## 3.

We next evaluate whether granting the motion would somehow "undo the past, executed effects of the judgment." *Ritter*, 811 F.2d at 1402.[7] This factor assesses the extent of the parties' reliance interests on the judgment; "relief is less warranted when the final judgment being challenged has caused one or more of the parties to change his legal position" because of the judgment. *Phelps*, 569 F.3d

---

[7] *Ritter* was cited favorably by the Supreme Court and "is instructive" for courts applying Rule 60(b)(6) in the habeas context. *Harvest v. Castro*, 531 F.3d 737, 748 n.8 (9th Cir. 2008).

at 1138.  A combined health fund that has used payments it receives pursuant to a declaratory judgment to cover the medical health benefits of retirees, for example, has "substantial[ly]" relied on the judgment.  *See Blue Diamond Coal Co. v. Trustees of the UMWA Combined Benefit Fund*, 249 F.3d 519, 528–29 (6th Cir. 2001).  We evaluate both the parties' "abstract interest in finality" and any action each party took in reliance on the judgment.  *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, 450 (9th Cir. 2019).

Nevada has an abstract interest in the finality of its criminal judgments.  "But the 'whole purpose' of Rule 60(b) 'is to make an exception to finality.'"  *Buck*, 137 S. Ct. at 779 (quoting *Gonzalez*, 545 U.S. at 529).  When a habeas petition is dismissed on flawed procedural grounds, "[t]here are no 'past effects' of the judgment that would be disturbed" if the habeas proceeding were reopened for further consideration, *Phelps*, 569 F.3d at 1138, and the state's interest in finality "deserves little weight," *Buck*, 137 S. Ct. at 779.  Bynoe never had the opportunity to litigate his underlying claims on the merits in a federal habeas proceeding, and the state never expended resources disputing them.  *See Miller*, 879 F.3d at 701.  He remains incarcerated, and "the parties would simply pick up where they left off."  *Phelps*, 569 F.3d at 1138.

That seven years passed between when the district court initially denied Bynoe's request for a *Rhines* stay and Bynoe filed his motion does not heighten the importance of the state's abstract finality interest; indeed, in *Phelps*, we found this factor to be minimal even though Phelps filed his Rule 60(b) motion eleven years after the district court reviewed his habeas petition.  *Id*.  We agree with the district court that this factor "weighs heavily in [Bynoe's] favor."  *Id*. at 1138.

**4.**

We next address the delay between the final judgment in Bynoe's case and his Rule 60(b) motion. "This factor represents the simple principle that a change in the law should not indefinitely render preexisting judgments subject to potential challenge. Rather, individuals seeking to have a new legal rule applied to their otherwise final case should petition the court for reconsideration with a degree of promptness[.]" *Id.* at 1138.

A long delay can be offset by a petitioner's diligence. *See id.* "In this respect, [this] factor is similar, although not identical, to the second *Gonzalez* factor, which emphasizes the petitioner's diligence in challenging on appeal the judgment he now seeks to overturn." *Id.* Bynoe filed his Rule 60(b)(6) motion within a year of *Mena*'s change in law. In the interim seven years, Bynoe sought Supreme Court review and, as discussed, exhibited diligence in pursuing his habeas claims. The district court erred by taking note only of the seven-year gap between the denial of Bynoe's request for a *Rhines* stay and the filing of his Rule 60(b)(6) motion and failing to accord appropriate weight to Bynoe's diligence and his ultimate timeliness. This factor slightly favors Bynoe.

**5.**

The fifth factor asks whether the challenged judgment has a close relationship to the change in law underlying the Rule 60(b)(6) motion. Where a court rested its judgment on a basis only marginally altered by later changes in relevant law, reopening a judgement is disfavored. *See Lopez*, 678 F.3d at 1137. Many legal rulings cast some doubt on the reasoning in previous cases; only those that may have affected the outcome of the judgment the petitioner seeks to

review should weigh toward a finding of extraordinary circumstances.

As applied to Bynoe's petition, *Mena* is one such ruling. *Mena* rejected the legal core of the district court's denial of his request for a *Rhines* stay. The court denied the stay because it was "well established law in this circuit that a petition containing only unexhausted claims *must* be dismissed." *Bynoe I*, 2009 WL 3060372, at *2 (emphasis added). *Mena* directly repudiated this absolute view of the existing law and held that district courts have discretion to stay fully unexhausted petitions. 813 F.3d at 910, 912. Had *Mena* been the law when Bynoe sought a *Rhines* stay, the district court may well have reached a different outcome.

The district court denied Bynoe's Rule 60(b) motion because *Mena* did not *mandate* a different outcome. *See Bynoe II*, 2017 WL 4079263, at *4. But the standard for evaluating the relationship between intervening law and the underlying issue in a district court's dismissal is not whether the change in law *requires* a different outcome; we consider only whether the change in law affects an issue dispositive to the outcome of the case. *See Lopez*, 678 F.3d at 1137. *Mena* undermined the central premise of the court's denial of a *Rhines* stay. That is sufficient, and this factor weighs in Bynoe's favor.

**6.**

Finally, we consider whether principles of comity weigh against reopening Bynoe's habeas proceeding. The considerations of comity for state laws and other judicial decisions may sometimes warrant abstention from overturning well-reasoned results. Comity concerns are minimal, however, when a petitioner seeks reconsideration of an erroneous procedural decision. *See Phelps*, 569 F.3d

at 1139–40.  In such situations, reopening the decision does not risk disturbing a court's reasoned, merits-based conclusion, because there never was one.

Bynoe seeks reconsideration of the procedural decision to deny his request for a stay.  On this factor, Bynoe's case is indistinguishable from *Phelps*.  *See id.* at 1139.  This factor weighs in Bynoe's favor.

## III.

In its resolve to put an end to Bynoe's habeas claims, the district court failed to recognize that Bynoe timely filed his motion and presented extraordinary circumstances warranting re-opening the final judgment.**[8]**  All six *Phelps* factors support reconsidering the district court's 2009 judgment.  The court abused its discretion in denying Bynoe's Rule 60(b)(6) motion.

We therefore reverse and remand the district court's denial of Bynoe's Rule 60(b)(6) motion.  On remand, Bynoe may request the district court to stay his petition under *Rhines* and *Mena* while he returns to state court to exhaust his federal constitutional claims.

**REVERSED and REMANDED.**

---

**[8]** We express no views on the merits of Bynoe's habeas claims in determining whether the district court abused its discretion in denying Bynoe's Rule 60(b) motion.

RAWLINSON, Circuit Judge, dissenting:

I respectfully dissent from the majority disposition because, in my view, the majority does not adhere to the applicable standard of review, abuse of discretion.

As an initial matter, it is important to note that relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure "rarely occur[s] in the *habeas* context," and the discretion afforded district courts in making the determination of whether relief is warranted is "especially broad." *Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018) (citations and internal quotation marks omitted) (emphasis in the original); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (directing a "strict interpretation of Rule 60(b)"); *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) (agreeing that Rule 60(b)(6) should be used "rarely in the habeas context . . . sparingly as an equitable remedy to prevent manifest injustice") (citation omitted).

"The decision to grant Rule 60(b)(6) relief [in the habeas context] is a case-by-case inquiry that *requires the trial court to intensively balance numerous factors . . .*" *Hall*, 861 F.3d at 987 (citation omitted) (emphasis added). The discretion vested in the district court "is a grand reservoir of equitable power" to be exercised by the district court. *Id.*

The obvious point is that it is the job of the district court, not this court, to "intensively balance" Rule 60(b)(6) factors, *id.*, which balance we review for an abuse of discretion. *See id.* at 984. An abuse of discretion occurs if the district court "does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." *Id.* (citation omitted). There is a clear distinction between deciding whether the district court applied the incorrect law (abuse of discretion review) or applied the law incorrectly

(*de novo* review). The former is an appropriate role for our court under Rule 30(b)(6); the latter is not. *See id.*

Our task is to examine the balancing of relevant factors by the district court and determine whether the district court abused its discretion in conducting that balancing, rather than conducting the balancing of factors ourselves. *See id*; *see also Miller*, 879 F.3d at 697 (reviewing the district court's reasoning). We must keep in mind that the discretion vested in the Rule 60(b) context is "especially broad due to the underlying equitable principles involved." *Miller*, 879 F.3d at 698 (citation omitted).

The district court first examined whether our decision in *Mena v. Long*, 813 F.3d 907 (9th Cir. 2016), addressed an unsettled area of law. The district court observed that in *Mena*, the panel stated that this court "had not previously addressed the question of whether the question of the *Rhines* [*v. Weber*, 544 U.S. 269 (2005)] stay-and-abey procedure is available when a petition was fully unexhausted, not mixed. *Mena*, 813 F.3d at 910." On the other hand, the district court noted that the Ninth Circuit had previously denied Bynoe a certificate of appealability (COA) on this very issue, reflecting that the issue was one of settled law within the Circuit.[1] *See Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (explaining that a "petitioner seeking a COA must show both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

---

[1] The fact that the COA ruling was not made in a published decision did not preclude the district court from considering the ruling as part of the record of proceedings. *See Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009) (instructing that "the proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the *circumstances surrounding the specific motion before the court*") (emphasis added).

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling") (citation and internal quotation marks omitted). Denial of Bynoe's requested COA signified that he did not make the required showing, *i.e.*, that the issue of staying and abeying unexhausted habeas petition was debatable. Denial also conveyed that the law was settled in a way that was not favorable to Bynoe's position. *See United States v. Winkles*, 795 F.3d 1134, 1143–47 (9th Cir. 2015) (analyzing the COA standard).

The district court next considered Bynoe's diligence and acknowledged that Bynoe had consistently raised the stay-and-abey issue throughout the proceedings.

The district court analyzed together the factors concerning reliance on the district court ruling, the delay between the finality of the judgment and the motion for Rule 60(b) relief, and comity concerns. The district court acknowledged Bynoe's contention that the state "relied only minimally" on the original ruling denying relief, because once Bynoe's habeas petition was dismissed the state's obligations regarding the matter came to an end. On the other side of the equation, the court considered the "strong" comity concerns presented by the state. The district court was receptive to the state's argument "that the Supreme Court has repeatedly recognized that the states have significant interests in comity and finality, and the exhaustion requirement is supposed to work in tandem with the statute of limitations and AEDPA's limited scope of review to protect those interests." The district court's focus on the state's interest is consistent with Supreme Court precedent. *See Calderon v. Thompson*, 523 U.S. 538, 555 (1998) (explaining that the limits placed on habeas relief "reflect [the Supreme Court's] enduring respect for the

State's interest in the finality of convictions that have survived direct review within the state court system") (citations and internal quotation marks omitted).

Finally, the district court discussed the relationship between the original decision and the decision embodying the change in the law. The court contemplated Bynoe's argument that the Ninth Circuit's ruling in *Mena* completely negated the district court's previous order dismissing Bynoe's habeas petition. The district court readily acknowledged that *Mena* adopted the analysis advanced by Bynoe in the course of litigating his motion for a stay and abeyance of his fully unexhausted petition. Nevertheless, the district court determined that the analysis did not end there. Rather, the district court observed that even if it had concluded that it had discretion to stay a fully unexhausted petition, that determination would not have necessarily translated into success for Bynoe on his habeas petition. Consequently, although *Mena* affected a preliminary portion of the analysis, the relationship between the district court's original decision and *Mena* was not ultimately of sufficient import to militate toward a finding of extraordinary circumstances in the district court's view.

The majority purports to take issue with the district court's exercise of its discretion. However, the majority's approach to review of the district court's ruling is actually more akin to cases involving *de novo* review rather than review for the broad discretion bestowed upon district courts in this context. Initially, the majority faults the district court's determination that our decision in *Mena* did not resolve a matter of unsettled law despite the fact that the district court referenced our denial of a COA requested by Bynoe on the very issue resolved by *Mena*. Nevertheless, the majority concludes that the district court's reliance on the

COA was legal error because the order denying the COA was unpublished.  *See Majority Opinion*, p. 19–20.  The majority relies upon *Phelps* to support this rationale.  *See id.*  However, *Phelps* stands for exactly the opposite proposition, concluding that the area of law was unsettled because of "various competing memorandum dispositions."  569 F.3d at 1126.  The *Phelps* panel left no doubt that the unpublished dispositions controlled the outcome of the cases before those panels.  *See id.* (noting that if Phelps' appeal had been heard by a panel that favored his position he would have prevailed).   So in Bynoe's case, where there was no competing unpublished disposition to render the law unsettled, the district court appropriately looked to the denial of the COA to conclude that the law was not unsettled.  In fact, *Phelps* directs district courts to "evaluate the circumstances surrounding the specific [Rule 60(b)] motion before the court."   *Id.* at 1133.   In this case, those circumstances included the denial of a COA rendered in an unpublished disposition.

Indeed, the United States Supreme Court has also considered the denial of a COA in an unpublished disposition.  *See Buck v. Davis*, 137 S. Ct. 759, 773 (citing the denial of a COA in *Buck v. Stephens*, 623 Fed. Appx. 668, 673 (5th Cir. 2015)).  And we have similarly referenced an unpublished disposition addressing a co-defendant's habeas claims in the course of resolving a Rule 60(b) issue.  *See Hall*, 861 F.3d at 983 (referencing habeas relief granted to a co-defendant in the unpublished disposition of *Sherrors v. Woodford*, 425 Fed. Appx. 617 (9th Cir. 2011)).  Thus, it is apparent that the district court's reference to the denial of the COA was faithful to our direction in *Phelps* to "evaluate the circumstances surrounding the specific [Rule 60(b)] motion before the court."  569 F.3d at 1133.  And it was consistent with the practice of the Supreme Court and our

court.  *See Buck*, 137 S. Ct. at 773; *see also Hall*, 861 F.3d at 983.  Because the district court's reliance on the COA was not an error of law and was supported by the record, its determination that *Mena* did not address a settled area of law fit comfortably within its "grand reservoir of equitable power."  *Hall*, 861 F.3d at 987.  The majority's disregard of this discretion elides our standard of review.

The district court acknowledged that Bynoe was diligent in pursuing his habeas claim.  However, the majority attempts to bootstrap this diligence determination into a finding of timeliness, which is a separate inquiry.  *See Majority Opinion*, p. 20.  In any event, without citation to any authority, the majority criticizes the district court for "taking note only of the seven-year gap between the denial of Bynoe's request for a *Rhines* stay and the filing of his Rule 60(b)(6) motion and failing to accord appropriate weight to Bynoe's diligence and his ultimate timeliness."  *Majority Opinion*, p. 23.  However, the district court considered precisely the factor as articulated in *Phelps*.  *See* 569 F.3d at 1138 ("The second factor . . . examines the *delay between the finality of the judgment and the motion for Rule 60(b)(6) relief*.") (citation and internal quotation marks omitted) (emphasis added).

In *Phelps*, we reasoned that "[t]his factor represents the simple principle that *a change in the law should not indefinitely render preexisting judgments subject to potential challenge*."  *Id.* (emphasis added).  Nothing in *Phelps required* the district court to temper its finding on the delay factor by its separate evaluation of the diligence factor.  And there is absolutely no mention of the majority's newly-imposed and untethered "ultimate timeliness" consideration.  More importantly, the *Phelps* factors are only guidelines for the exercise of the district court's broad discretion.  *See id.*

at 1135 ("The *factors* we discuss below *are designed to guide courts in determining whether such extraordinary circumstances have been demonstrated . . .*) (footnote reference omitted) (emphases added); *see also Hall*, 861 F.3d at 987 (noting that the *Phelps* factors "are not a rigid or exhaustive checklist") (citation and internal quotation marks omitted). Contrary to the majority's contention, Bynoe is not in the same position as Phelps was. As noted by the panel in *Phelps*, "his original motion for consideration was filed only *four* months after the judgment dismissing his petition became final." (footnote reference omitted) (emphasis in the original). Simply put, the district court acted within its discretion and in harmony with our decision in *Phelps* when evaluating the delay factor.

The dissent also takes issue with the district court's assessment of the import of *Mena*. The district court did not state that *Mena* failed to *mandate* a different outcome. Rather, as discussed, the district court observed that even if it had determined that it had discretion to stay a fully unexhausted petition, that determination would not have necessarily changed the outcome. Ultimately, the outcome might have changed or it might not have changed.

Finally, the majority disagrees with the district court's evaluation of the comity concerns. However, the district court was completely entitled to adhere to the well-established "enduring respect for the State's interest in the finality of convictions that have survived direct review within the state court system." *Calderon*, 523 U.S. at 555; *see also Miller*, 879 F.3d at 700 (discussing the "profound respect" afforded "finality interests"). The district court committed no legal error and made no clearly erroneous finding of fact in weighing the comity factor. *See Hall*, 861 F.3d at 984. That the majority would have assessed this

factor differently does not constitute an abuse of discretion on the part of the district court.  *See id.*

At bottom, the majority would have weighed the factors in a different manner.  However, that difference of opinion does not constitute an abuse of discretion.  *See id.*  In so holding, the majority fails to respect the "intensive []" balance" that is to be made by the district court, *id.* at 987. and the especially broad discretion vested in the district court.  *Miller*, 879 F.3d at 698.

Keeping in mind that the relief sought by Bynoe is to be granted "rarely" and "sparingly" by a district court, *Hall*, 861 F.3d at 987, I cannot in good conscience impose my own view of the appropriate weighing of the *Phelps* factors and pass it off as abuse of discretion review.  Rather, I respect the "grand reservoir of equitable power" upon which the district court decision rested.  *Id.*

I respectfully dissent.