**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERNESTO SALGADO MARTINEZ,
*Petitioner-Appellant*,

v.

DAVID SHINN, Director; JAMES
KIMBLE,* Warden, Arizona State
Prison - Eyman Complex,
*Respondents-Appellees*.

No. 21-99006

D.C. No.
2:05-cv-01561-
ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Submitted May 27, 2021**
San Francisco, California

Filed May 16, 2022

---

* James Kimble has been substituted for his predecessor, Charles Goldsmith, as Warden of the Arizona State Prison - Eyman Complex under Fed. R. App. P. 43(c)(2).

** The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  M. Margaret McKeown, William A. Fletcher, and
Milan D. Smith, Jr., Circuit Judges.

Per Curiam Opinion

**SUMMARY[***]**

**Habeas Corpus / Fed. R. Civ. P. 60(b)**

The panel denied Ernesto Salado Martinez's request for a certificate of appealability (COA) that would allow Martinez to challenge the district court's denial of his Fed. R. Civ. P. 60(b)(6) motion for relief from final judgment, in a case in which this court previously denied Martinez's federal habeas corpus petition under 28 U.S.C. § 2254.

Martinez was convicted of first-degree murder of an Arizona police officer after a jury trial in 1997 and was sentenced to death by the state court.

Martinez moved in the district court under Rule 60(b)(6) for additional discovery to develop (1) a potential claim under *Napue v. Illinois*, 360 U.S. 264 (1959), that the prosecution knowingly elicited false testimony; and (2) a potential claim of actual innocence after a witness's apparent recantation of key guilt-phase testimony.

Martinez relied on *Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020), for two propositions:  (1) that *Mitchell*

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

provided the district court with jurisdiction to consider his motion for discovery to develop the potential *Napue* and actual innocence claims under Rule 60(b)(6) because the motion is not a disguised second or successive petition; and (2) that *Mitchell* constitutes an extraordinary change in the law governing post-judgment requests for discovery and therefore authorizes the district court to grant his motion under Rule 60(b)(6).

The panel agreed with Martinez that, under *Mitchell*, the district court had jurisdiction to consider his Rule 60(b)(6) motion for discovery to develop potential claims, and correctly declined to dismiss the motion as a disguised second or successive petition.

Applying the factors set forth in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009), the panel found that the holding in *Mitchell*, which did not disturb the underlying rules governing the discovery that Martinez seeks, did not constitute an extraordinary circumstance justifying relief from final judgment under Rule 60(b)(6). Because no reasonable jurist would disagree with the district court's decision to deny the Rule 60(b)(6) motion, the panel declined to grant Martinez's requested COA.

## COUNSEL

Jon M. Sands, Federal Public Defender; Timothy M. Gabrielsen, Assistant Federal Public Defender; Office of the Federal Public Defender, Tucson, Arizona; for Petitioner-Appellant.

Mark Brnovich, Attorney General; Lacy Stover Gard, Deputy Solicitor General/Chief of Capital Litigation; Laura P. Chiasson, Assistant Attorney General; Office of the Attorney General, Tucson, Arizona; for Respondents-Appellees.

**OPINION**

PER CURIAM:

Ernesto Salgado Martinez moves for a certificate of appealability ("COA") that would allow him to challenge the district court's denial of his Rule 60(b)(6) motion for relief from final judgment. Martinez was convicted of first-degree murder of an Arizona police officer after a jury trial in 1997 and was sentenced to death by the state court. We affirmed the district court's denial of his federal habeas corpus petition under 28 U.S.C. § 2254. *See Martinez v. Ryan*, 926 F.3d 1215 (9th Cir. 2019).

After we affirmed the district court's denial, Martinez moved in the district court under Rule 60(b)(6) for additional discovery to develop (1) a potential claim under *Napue v. Illinois*, 360 U.S. 264 (1959), that the prosecution knowingly elicited false testimony from witness Detective Douglas Beatty about the condition of the ignition of the stolen car Martinez was driving at the time of the crime; and (2) a potential claim of actual innocence after the apparent recantation of key guilt-phase testimony by his acquaintance Oscar Fryer. Martinez argued in the district court that our decision in *Mitchell v. United States*, 958 F.3d 775 (9th Cir. 2020), is a change of law that constitutes an "extraordinary circumstance," permitting him to reopen his final judgment and obtain the requested discovery.

The district court denied Martinez's Rule 60(b)(6) motion and declined to issue a COA. The court also denied Martinez's motion for reconsideration. Because no reasonable jurist could find that *Mitchell* constitutes an extraordinary circumstance justifying the reopening of his final judgment under Rule 60(b)(6), we deny Martinez's request for a COA.

## I.  Background

### A.  Factual Background

In August 1995, Martinez drove from California to Globe, Arizona, to visit friends and family in a stolen blue Monte Carlo with stolen license plates registered to another car. Martinez had an outstanding felony warrant for his arrest in Arizona. He met a friend, Oscar Fryer, in Globe. Fryer testified at trial that he spoke with Martinez for half an hour at a carwash while sitting inside his Monte Carlo, and that Martinez showed him a .38 caliber handgun with tape wrapped around the handle. Precisely what Martinez said to Fryer during this conversation is now disputed and is a subject of his instant motion.

A few days later, on August 15, Martinez left Globe and drove to Payson, Arizona, on the Beeline Highway. At approximately 11:30 am, Martinez bought gas at a Circle K in Payson and drove south toward Phoenix, Arizona. Driving at a high rate of speed, he passed several cars, including one driven by Steve and Susan Ball, who noticed his blue Monte Carlo.

Officer Robert Martin pulled Martinez over at Milepost 195. The Balls drove past them and saw Officer Martin's

patrol car stopped behind Martinez's Monte Carlo. The Balls both testified that they saw Martinez's driver's side door open, with Officer Martin standing inside the door, and both Officer Martin and Martinez "looking backwards" into the backseat of the car. Susan Ball recalled them remarking, "Oh, good, he got the speeding ticket." After the Balls passed, Martinez shot Officer Martin four times with a .38 caliber handgun. He shot him in the hand, neck, back, and face, killing him.

Shortly after Martinez killed Officer Martin, the Balls again saw him speeding in the blue Monte Carlo. Martinez passed them about a minute after they had passed him and Officer Martin on the side of the road. The Balls later saw Martinez run a red light and drive erratically. They also saw two police officers coming from the opposite direction with lights flashing. The Balls caught up with Martinez at a stop light and saw him "playing with something in the glove box." They wrote down his license plate numbers.

Martinez drove through Phoenix and reached Blythe, California, at around 4:00 pm, when he called his aunt, asking her to wire him money. At 6:00 pm, he called his aunt again asking her to wire him money. At approximately 8:00 pm, he entered a Mini-Mart in Blythe. He stole money from the cash register and shot and killed the clerk. Ballistics reports showed that a shell casing was consistent with the .9 mm ammunition used in Officer Martin's service weapon.

Martinez then drove to his cousin's home in Coachella, California. When police officers apprehended Martinez, they recovered a .38 caliber handgun from his friend Tommy Acuna, who identified it to police as "the murder weapon."

Martinez had abandoned the Monte Carlo while fleeing on foot.

While in jail awaiting trial, Martinez called a friend, Eric Moreno. He told Moreno that "he got busted for blasting a *jura*"—slang for police officer. He also told him that one of his guns had been "stashed." Police officers obtained a warrant to search Martinez's friend Johnny Acuna's trailer and found Officer Martin's .9 mm handgun under a mattress.

An Arizona jury convicted Martinez of first-degree murder for killing Officer Martin, two counts of theft, and two counts of misconduct involving weapons. The judge sentenced Martinez to death for the murder conviction, and terms of imprisonment for the other crimes.

Martinez was separately indicted for the murder of the clerk of the Mini-Mart in Blythe, California. After he was tried and sentenced in Arizona, he was extradited to stand trial in Riverside County, California.

## B. Disputed Testimony

Martinez now seeks discovery to dispute two pieces of evidence—Detective Beatty's testimony that the Monte Carlo had a "punched ignition," and Oscar Fryer's testimony that Martinez had told him that he was "not going back to jail." This evidence was used at trial to help prove that Martinez killed Officer Martin with premeditation. Martinez's defense counsel argued lack of premeditation as an alternative defense in closing argument. Martinez's primary defenses throughout trial, however, were mistaken identity and failure of the prosecution to carry its burden of proof. In his instant motion, Martinez argued to the district court, and now argues

to us, that the evidence he seeks under Rule 60(b)(6) would show that he did not kill Officer Martin with premeditation and that he is therefore actually innocent of first-degree murder. *See Sawyer v. Whitley*, 505 U.S. 333, 336 (1992).

### 1.  Testimony of Detective Beatty

At trial, the prosecution called as a witness Detective Douglas Beatty, a Maricopa County homicide detective who was assigned to investigate Officer Martin's death. The court permitted the State to recall Detective Beatty to the stand to question him about the condition of the ignition of the Monte Carlo when it was recovered in California, in order to help prove that Martinez knew that it was stolen. Detective Beatty testified that when he attempted to turn on the recovered Monte Carlo with keys found in its glove compartment, he discovered that "the ignition switch to the Monte Carlo was missing." He described the ignition switch as "a hollow cavity" that could be turned on with "some sort of instrument," such as a screwdriver.

The prosecution indirectly referred to Detective Beatty's "punched" ignition testimony once during its rebuttal closing argument. The prosecution used the testimony to rehabilitate a witness who had identified Martinez as purchasing gas at the Circle K shortly before the shooting. The State referred to the Monte Carlo as stolen multiple times, in its opening statement and closing arguments, as part of its argument that Martinez had premeditated Officer Martin's killing.

After Martinez's trial in Arizona, he was tried in California for killing the clerk in the Mini-Mart. Prosecutors in the California case gave to Martinez files that they had

obtained from the Arizona prosecutors. Those files included notes and a report from Ricci Cooksey, a California forensic examiner. Martinez argues that Cooksey's report "failed to note a punched ignition when the Monte Carlo was impounded at the time of Martinez's arrest." Cooksey's notes included the names and phone numbers of "Doug Beatty," of the "Maricopa Co. Sheriff," and of the lead prosecutor, "Bob Shutz [sic]," in Martinez's Arizona case. Martinez argues that these notes are evidence that Cooksey spoke to Arizona prosecutors prior to the Arizona trial. The California prosecutors also gave Martinez a photograph of the Monte Carlo showing an intact ignition. Martinez argues that this photograph shows that the ignition was not "punched" at the time of the crime, and that the photograph was "previously suppressed" by the Arizona prosecutors.

## 2. Testimony of Oscar Fryer

Also at trial, the prosecution called Oscar Fryer as a witness to testify about his conversation with Martinez at the Globe carwash prior to Officer Martin's murder. Fryer testified that Martinez had told him there was a warrant out for his arrest, that he was on probation, that he had a gun, and that if he was stopped by police, "he wasn't going back to jail."

In its closing argument, the prosecution repeatedly referred to Fryer's testimony, emphasizing Martinez's statement that "he wasn't going back to jail," as central evidence of both his motive and premeditation. The prosecution also emphasized two additional pieces of evidence showing premeditation: (1) the time between the traffic stop and the shooting, and (2) the four times that

Officer Martin was shot. That additional evidence was (and is) undisputed.

Seven years after Martinez's Arizona trial, Fryer spoke about his testimony to defense investigator Gerald Monahan, who had been appointed to work on Martinez's subsequent California case. Monahan declares that Fryer told him that he "was high on methamphetamine at the time he testified against Mr. Martinez at trial"; that "it was his opinion that Mr. Martinez would shoot it out with police if he were pulled over by police, rather than be arrested"; and that "Mr. Martinez did not tell Mr. Fryer that he would shoot it out with police if he were pulled over." Martinez argues that Fryer's statements, as reported by Monahan, support his claim that he did not premeditate the murder of Officer Martin, and that he is therefore actually innocent of the death penalty.

## C. Procedural History

The Supreme Court of Arizona affirmed Martinez's conviction and death sentence in May 2000. *State v. Martinez*, 999 P.2d 795 (Ariz. 2000). Martinez sought post-conviction relief in state court, which the Superior Court denied. The Arizona Supreme Court denied his petition for review in May 2005.

Martinez filed a federal habeas petition on May 25, 2005. On April 30, 2007, Martinez filed a motion for evidentiary development in the district court. He sought to inspect the Monte Carlo's ignition switch to assess the veracity of Detective Beatty's testimony. He also sought to develop evidence that prosecutors withheld evidence undermining Oscar Fryer's credibility, in violation of *Brady v. Maryland*,

373 U.S. 83 (1963), including evidence of Fryer's drug use and of a favorable plea deal. On September 7, 2007, Martinez filed a supplemental motion for evidentiary development, requesting the court's permission, *inter alia*, to test the keys found in the glove box of the Monte Carlo.

The district court denied Martinez's motions for evidentiary development. The court concluded that further discovery as to both Detective Beatty and Oscar Fryer would not establish Martinez's actual innocence of premeditated, first-degree murder. The court denied Martinez's habeas petition on March 20, 2008.

Martinez appealed from the district court's decision. While the appeal was pending, he filed a motion in the district court, styled as a "Request for Indication Whether Court Would Consider Motion for Relief from Judgment Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure." The motion sought to reopen the court's final judgment to revisit the court's denial of his earlier motions for evidentiary development. The district court denied the motion.

Martinez then moved to stay appellate proceedings and for a limited remand to the district court. On July 7, 2014, we granted Martinez's motion for a limited remand to the district court for possible consideration of several procedurally defaulted claims in light of the Supreme Court's intervening decision in *Martinez v. Ryan*, 566 U.S. 1 (2012). We also remanded to allow Martinez to move for leave to file in the district court a motion styled as "a renewed Request for Indication Whether District Court Would Consider a Rule 60(b) Motion . . . for consideration of a possible *Brady-Napue* claim in light of newly discovered evidence."

Martinez filed a "Renewed Request for Indication Whether the District Court Would Consider a Rule 60(b) Motion and Supplemental *Martinez* Brief" in the district court. Martinez argued that under *Gonzalez v. Crosby*, 545 U.S. 524 (2005), his motion met the requirements for Rule 60(b)(6) relief on the grounds that he was attacking the integrity of the earlier habeas proceeding, that relief "is appropriate to accomplish justice," and that the basis for the relief was truly "extraordinary." He argued that the newly discovered photograph of the intact ignition of the Monte Carlo, and handwritten investigative notes suggesting that the ignition was intact when Martinez was driving the car, should have been produced to his defense counsel in Arizona. Martinez also sought evidence to develop the related *Napue* claim that prosecutors knowingly elicited false ignition testimony from Detective Beatty.

The district court declined Martinez's request to entertain a Rule 60(b)(6) motion. The district court characterized Martinez's request as raising new substantive claims, and therefore, as a second-or-successive petition. The district court denied Martinez's request to issue a COA. Martinez moved in this court for leave to file a motion for a COA, which we granted on October 7, 2016, expanding the COA to include all of his remanded claims.

In our opinion issued June 18, 2019, we affirmed the district court's denial of habeas corpus relief. *Martinez*, 926 F.3d at 1221. We declined to reach the discovery requests relevant to the potential *Brady* and *Napue* claims because the district court's ruling on Martinez's "Request for Indication" constituted a non-reviewable order that was procedural and "interlocutory in nature." *Id.* at 1229 (quoting *Scott v. Younger*, 739 F.2d 1464, 1466 (9th Cir. 1984)). The

Supreme Court of the United States denied certiorari. No. 19-7627 (U.S. May 18, 2020).

On July 29, 2020, Martinez renewed his request in the district court under Rule 60(b)(6) for relief from judgment to obtain additional discovery to develop a potential *Napue* claim based on Detective Beatty's ignition testimony and an actual innocence claim based on the 2014 purported recantation of Oscar Fryer's guilt-phase trial testimony.

The district court denied Martinez's Rule 60(b)(6) motion and his request for a COA on March 23, 2021. Martinez moved for reconsideration, which the court also denied. The court explained in its order denying reconsideration that Martinez lacked "good cause" for discovery because the evidence, even if obtained, would not unsettle his conviction for first-degree premeditated murder. The court wrote, "Even if the fact that the car was stolen was removed from the equation, along with Martinez's statement that he intended not to go back to jail if stopped by police, the fact remains that Martinez had a warrant for his arrest and was illegally in possession of a handgun." Further, the court noted that to prove premeditation, "the state also relied heavily in closing arguments on the amount of time it would have taken Officer Martin to walk the distance from his vehicle to the stolen Monte Carlo, where he was shot at the driver's side door." The court determined that "the evidence supporting premeditation was overwhelming and uncontroverted." The court concluded that "Martinez has failed to demonstrate that *Mitchell* is an intervening change in law that constitutes extraordinary circumstances sufficient to permit him to reopen the judgment in these circumstances."

Martinez timely filed a notice of appeal and moved for a COA in this court.

## II.  Standard of Review

A COA is required in order to appeal the denial of a Rule 60(b) motion for relief from a district court's judgment denying federal habeas relief. *See United States v. Winkles*, 795 F.3d 1134, 1141–43 (9th Cir. 2015); *see also* 28 U.S.C. § 2253(c)(1) (establishing the general COA requirement for habeas petitioners); *Payton v. Davis*, 906 F.3d 812, 817–18 (9th Cir. 2018) (extending the COA requirement to a Rule 60(d) motion in a § 2254 habeas petition).  A COA may only issue if the movant shows that (1) jurists of reason would find it debatable whether the district court abused its discretion in denying the Rule 60(b) motion, and (2) jurists of reason would find it debatable whether the underlying section 2255 motion or section 2254 petition states a valid claim of the denial of a constitutional right. *See Winkles*, 795 F.3d at 1143 (explaining that this test accords with the standard governing COAs for procedural rulings set forth in *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000), while also incorporating the standard of review applicable to Rule 60(b) motions—abuse of discretion).

The COA inquiry is a threshold inquiry that "is not coextensive with a merits analysis." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017).  At the COA stage, we ask "only if the District Court's decision was debatable." *Id.* at 774 (quoting *Miller-El v. Cockrell,* 537 U.S 322, 327, 348 (2003)).  To meet this standard, the petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; *or* that the questions are adequate to deserve encouragement to proceed

further." *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) (internal quotation marks and brackets omitted) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

## III.  Discussion

### A.  Rule 60(b)

Rule 60(b) provides for relief from a district court's final judgment on six grounds:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  A court's power to vacate judgments under Rule 60(b) in order "to accomplish justice" is balanced against "the strong public interest in the timeliness and finality of judgments." *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009) (alterations and internal quotation marks omitted).

Some Rule 60(b) motions are available to federal habeas petitioners despite the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). In relevant part, AEDPA establishes three requirements for second or successive habeas petitions:

> First, any claim that has already been adjudicated in a previous petition must be dismissed. [28 U.S.C.] § 2244(b)(1). Second, any claim that has *not* already been adjudicated must be dismissed unless it relies on either a new or retroactive rule of constitutional law or new facts showing a high probability of actual innocence. § 2244(b)(2). Third, before the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions. § 2244(b)(3).

*Gonzalez*, 545 U.S. at 529–30. However, "[w]hen no 'claim' is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application," and therefore the motion may be considered by a district court. *Id.* at 533. Rule 60(b) motions alleging a "previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar," or alleging "some defect in the integrity of the federal habeas proceedings," such as "[f]raud on the federal habeas court," do not advance a "claim" and are permitted despite AEDPA. *Id.* at 532, 532 nn.4–5. On the other hand, motions asking

"for a second chance to have the merits determined favorably" are not. *Id.* at 532 n.5.

Rule 60(b)(6), upon which Martinez relies, is a catchall provision that depends on the "exercise of a court's ample equitable power . . . to reconsider its judgment." *Phelps*, 569 F.3d at 1135. A movant seeking relief under Rule 60(b)(6) is required "to show 'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). "Extraordinary circumstances occur where there are 'other compelling reasons' for opening the judgment" that prevented the movant from raising the basis of the motion during the pendency of the case. *Bynoe v. Baca*, 966 F.3d 972, 979, 983 (9th Cir. 2020) (quoting *Klapprott v. United States*, 335 U.S. 601, 613 (1949)). Although "[s]uch circumstances will rarely occur in the habeas context," *Gonzalez*, 545 U.S. at 535, "Rule 60(b)(6) can and should be 'used sparingly as an equitable remedy to prevent manifest injustice,'" *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017) (quoting *United States v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)).

We held in *Phelps* that an intervening change in law can constitute an "extraordinary circumstance" justifying relief under Rule 60(b)(6) for habeas petitioners, but that courts must analyze motions under Rule 60(b)(6) using a "case-by-case inquiry" that balances numerous factors. 569 F.3d at 1133. "A relevant alteration to constitutional rights, for example, may be sufficient, but a narrow change in peripheral law is 'rarely' enough." *Bynoe*, 966 F.3d at 983 (citations omitted). In *Phelps*, we outlined six non-exhaustive factors that are to be flexibly considered to determine whether a post-

judgment change in the law meets the "extraordinary-circumstances" requirement:

> (1) [T]he nature of the legal change, including whether the change in law resolved an unsettled legal question; (2) whether the movant exercised diligence in pursuing reconsideration of his or her claim; (3) the parties' reliance interests in the finality of the judgment; (4) the delay between the finality of the judgment and the Rule 60(b)(6) motion; (5) the relationship between the change in law and the challenged judgment; and (6) whether there are concerns of comity that would be disturbed by reopening a case.

*Id.* at 983 (summarizing *Phelps*, 569 F.3d at 1134–40). Relevant here, "only [legal rulings] that may have affected the outcome of the judgment the petitioner seeks to review should weigh toward a finding of extraordinary circumstances." *Id.* at 986. "[W]e consider . . . whether the change in law affects an issue dispositive to the outcome of the case." *Id.* In the case before us, as we explain below, *Mitchell* does not substantially affect either Martinez's underlying case or his request for discovery. The only effect of *Mitchell* is to make clear that the district court had jurisdiction to consider his Rule 60(b)(6) request.

## B. *Mitchell*

In *Mitchell*, Lezmond Mitchell, a Navajo citizen sentenced to death for a carjacking resulting in death, moved under Rule 60(b)(6) for relief from final judgment following his unsuccessful § 2255 habeas proceedings. 958 F.3d at 780,

783. Mitchell challenged the court's earlier procedural rulings denying him authorization to interview the jurors at his criminal trial to investigate juror misconduct. *Id.* at 779. In 2009, the district court found that Mitchell did not show good cause for the requested interviews because he identified no evidence of juror misconduct. *Id.* In 2018, Mitchell moved for relief from the district court's 2009 ruling, arguing that the Supreme Court's intervening decision in *Peña-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017), significantly changed the law governing requests to interview jurors for racial bias and therefore constituted an "extraordinary circumstance" justifying reopening his habeas proceeding under Rule 60(b)(6). *Mitchell*, 958 F.3d at 779. The Court in *Peña-Rodriguez* had held that juror statements demonstrating racial animus could be admissible as evidence notwithstanding the longstanding no-impeachment rule barring juror testimony about deliberations and Rule 606(b) of the Federal Rules of Evidence. *Peña-Rodriguez*, 137 S. Ct. at 869–70.

In *Mitchell*, we considered the district court's jurisdiction to entertain Mitchell's Rule 60(b)(6) motion. We held, as a matter of first impression, that a "prisoner's request to develop evidence for a *potential new claim*" does not qualify as a "claim" under *Gonzalez* if it does not assert a federal basis for relief from the prisoner's conviction or sentence, but rather simply gives a prisoner "the opportunity to attempt to develop a claim" that might entitle him or her to relief. *Mitchell*, 958 F.3d at 786 (emphasis added). Therefore, such a request for discovery brought under Rule 60(b) was not barred as a "disguised second or successive" habeas application, and "the district court had jurisdiction to decide [Mitchell's] Rule 60(b)(6) motion." *Id.*

We then turned to the question of whether Mitchell had established "extraordinary circumstances" that would justify the reopening of his case under Rule 60(b)(6). *Id.* ("[W]e consider whether the alleged extraordinary circumstance, such as a change in the law, was material to the prisoner's claim."). We explained, "a mere development in jurisprudence, as opposed to an unexpected change, does not constitute an extraordinary circumstance for purposes of Rule 60(b)(6)." *Id.* at 787. We considered the legal change wrought by the Supreme Court's decision in *Peña-Rodriguez* and rejected Mitchell's contention that it represented such a "fundamental change in the law relevant to his request to interview jurors . . . [that] the district court was obliged to grant his Rule 60(b)(6) motion." *Id.* at 790. Rather, we held, "[a]lthough *Peña-Rodriguez* established a new exception to Rule 606(b), this change in law left untouched the law governing investigating and interviewing jurors." *Id.* We concluded that because Mitchell failed to present an extraordinary circumstance that would justify reopening in his case, "the district court did not abuse its discretion by denying Mitchell's Rule 60(b) motion." *Id.* at 792.

## C.  Martinez's Rule 60(b)(6) Motion

In his Rule 60(b)(6) motion, Martinez relied on *Mitchell* for two propositions: (1) that *Mitchell* provided the district court with jurisdiction to consider his motion requesting discovery to develop potential *Napue* and actual innocence claims under Rule 60(b)(6) because it is not a disguised second or successive petition; and (2) that *Mitchell* constitutes an extraordinary change in the law governing post-judgment requests for discovery and therefore authorizes the district court to grant his motion under Rule 60(b)(6). Martinez's first proposition is correct, but his second is not.

We agree with Martinez's assertion that, under our holding in *Mitchell*, the district court had jurisdiction to consider his Rule 60(b)(6) motion for discovery to develop potential claims. The district court correctly declined to dismiss Martinez's Rule 60(b)(6) motion as a disguised second or successive petition.

The district court initially assumed that *Mitchell* constituted an "extraordinary change in the law" such that it could entertain Martinez's motion. Based on that assumption, the district court denied his motion on the merits. We do not assume, as the district court initially did,[1] that *Mitchell* constitutes an "extraordinary circumstance" under Rule 60(b)(6). Applying the factors set forth in *Phelps*, 569 F.3d at 1134–40, we find that the holding in *Mitchell* falls short of satisfying the extraordinary circumstances requirement here.

There is no question that *Mitchell* established new law in this circuit as to the district court's jurisdiction to hear Rule 60(b) motions for post-judgment discovery in habeas cases. Our new holding in *Mitchell* was that a district court has jurisdiction to consider discovery requests brought pursuant to Rule 60(b). *Mitchell*, 958 F.3d at 785–86. But there was no new law with respect to the discovery request itself. *See id.* at 790. Rather, we held that *Peña-Rodriguez* was not an extraordinary change in the law governing access to jurors such that a Rule 60(b)(6) motion was authorized. *Id.* at 791.

---

[1] Although the district court initially assumed *arguendo* that *Mitchell* was an extraordinary change in the law, in its order denying reconsideration, the court concluded that "Martinez has failed to demonstrate that *Mitchell* is an intervening change in law that constitutes extraordinary circumstances sufficient to permit him to reopen the judgment in these circumstances."

Because *Mitchell* did not change the substantive law governing Martinez's discovery requests, it does not constitute an extraordinary circumstance justifying relief from final judgment under Rule 60(b)(6). Just as we held in *Mitchell* that *Peña-Rodriguez* did not disturb the longstanding rules giving trial courts discretion over granting requests to interview jurors, we hold here that *Mitchell* did not disturb the underlying rules governing the discovery that Martinez seeks. *See id.* at 789. The district court therefore did not err in applying our well-settled rules governing discovery in habeas proceedings in denying Martinez's Rule 60(b)(6) motion for additional discovery. *See* Rule 6(a), Rules Governing § 2254 Cases (allowing discovery for "good cause"); *see also Bracy v. Gramley*, 520 U.S. 899, 908–909 (1997) (defining "good cause" for discovery). No reasonable jurist would disagree with the district court's decision.

## IV. Conclusion

It is beyond debate among reasonable jurists that the district court did not abuse its discretion in denying Martinez's motion under Rule 60(b)(6). We therefore decline to grant Martinez's requested COA.

**Certificate of Appealability DENIED.**