NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 28 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JOSEPH WILLIAM HART,

Petitioner-Appellant,

v.

RONALD BROOMFIELD, Acting Warden,
California State Prison at San Quentin,

Respondent-Appellee.

No. 20-99011

D.C. No. 2:05-cv-03633-DSF

MEMORANDUM*

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted January 22, 2024
Pasadena, California

Before: FRIEDLAND, KOH, and H.A. THOMAS, Circuit Judges.

Joseph William Hart appeals the denial of his 28 U.S.C. § 2254 habeas

corpus petition challenging his conviction and death sentence for first-degree

murder with rape and sodomy special circumstances. We have jurisdiction under

28 U.S.C. §§ 1291 and 2253. We affirm.

Hart raises eight claims on appeal, including two claims for which the

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

district court granted a certificate of appealability (COA), and six claims for which it did not.[1] We grant Hart a COA with respect to his uncertified claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing evidence that could have impeached a witness who testified that Hart confessed to killing his niece (Claim 12(B)). We deny a COA with respect to the remainder of Hart's uncertified claims.

1. During the penalty phase of Hart's trial, Hart's former cellmate Randall Gresham testified in exchange for a plea agreement that Hart had confessed to murdering his 11-year-old niece, Shelah M. Hart claims that the State violated its *Brady* obligations by suppressing evidence that Gresham received a more favorable plea deal than the State revealed at trial, and, further, that the State did not disclose that Gresham was planted in Hart's cell to extract a confession from him.

We may not hear an appeal of the denial of a Section 2254 petition unless the petitioner has received a COA. 28 U.S.C. § 2253(c)(1)(A). "When the district court denies a habeas petition on procedural grounds . . . a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its

---

[1] Hart's certified claims are addressed in a concurrently filed opinion.

procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This "is a threshold inquiry that 'is not coextensive with a merits analysis.'" *Martinez v. Shinn*, 33 F.4th 1254, 1261 (9th Cir. 2022) (quoting *Buck v. Davis*, 580 U.S. 100, 115 (2017)).

Although the district court did not issue a COA with respect to Claim 12(B), we construe Hart's briefing of the claim as a motion to expand the COA. *See* 9th Cir. R. 22-1(e). Because reasonable jurists might find both the merits of Claim 12(B) and the district court's procedural ruling debatable, we grant a COA with respect to that claim. We affirm the district court's dismissal of the claim, however, because it is procedurally barred.

2. In all three of his state court post-conviction proceedings, Hart raised a claim that the State unconstitutionally suppressed evidence relevant to Gresham's testimony. Each time, the Supreme Court of California (CSC) denied the claim as procedurally barred, citing its decisions in *In re Clark*, 855 P.2d 729 (Cal. 1993), and *In re Robbins*, 959 P.2d 311 (Cal. 1998). These cases, together with *In re Gallego*, 959 P.2d 290 (Cal. 1998), "describe California's timeliness requirement," under which "[a] prisoner must seek habeas relief without 'substantial delay,' as 'measured from the time the petitioner or counsel knew, or reasonably should have known, of the information offered in support of the claim and the legal basis for the claim.'" *Walker v. Martin*, 562 U.S. 307, 312 (2011) (citations omitted)

(quoting *Robbins*, 959 P.2d at 317, 322).

"The procedural bar doctrine prohibits a federal court from granting relief on the merits of a state prisoner's federal claim when the state court denied the claim based on an independent and adequate state procedural rule." *Ayala v. Chappell*, 829 F.3d 1081, 1095 (9th Cir. 2016). Hart argues that California's timeliness bar is neither independent of federal law nor adequate to support the dismissal of his claim. We disagree.

Hart's argument that California's timeliness bar is not independent is foreclosed by our decision in *Bennett v. Mueller*, 322 F.3d 573, 581–83 (9th Cir. 2003). As we explained in *Bennett*, the CSC's decision in *Robbins* establishes that California courts "no longer consider federal law in denying a petition on untimeliness grounds." *Id.* at 581.[2]

Hart has also not met his burden of showing that California's timeliness rule was not adequate at the time of his default, in light of his particular circumstances. In the main, he contends that California's timeliness rule was not "firmly

---

[2] The CSC's decision in *In re Sanders*, 981 P.2d 1038 (Cal. 1999), does not undermine this conclusion. There, the CSC held that, as "a matter of state law, not federal constitutional law," *id.* at 1052, a habeas petitioner may be able to establish good cause for procedural default where "appointed counsel abandons his or her client during the postconviction period," *id.* at 1053. Nothing in *Sanders* suggests that California courts consider the merits of a petitioner's federal claims when determining whether counsel has abandoned those claims during post-conviction proceedings.

established or regularly followed" as of November 6, 1998 (when he filed his first state habeas petition), given that *Robbins* and *Gallego* were both decided only three months earlier, in August 1998. *See Walker*, 562 U.S. at 316 ("To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'"); *Bradford v. Davis*, 923 F.3d 599, 611 (9th Cir. 2019) (adequacy of state procedural rule typically determined as of the date "when the state habeas petition is filed").

Hart does not, however, suggest that *Robbins* and *Gallego* conflicted with *Clark*, which was decided in 1993, more than five years before Hart filed his state habeas petition. As the Supreme Court has recognized, the CSC typically invokes the timeliness rule by citing *Clark* and *Robbins* together. *See, e.g.*, *Walker*, 562 U.S. at 318. Hart has not explained why *Clark* was insufficient to provide him notice of the timeliness rule or why, in the circumstances of his case, the CSC's decision in *Clark* was inadequate to bar his claim. Although the State bears the "ultimate burden of proving the adequacy" of its procedural rules, Hart bears the initial burden to "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Bennett*, 322 F.3d at 585–86. Hart has made no such allegations and provided no such authority here.

Hart nevertheless argues that California's timeliness rules may not be applied against him "in a surprising or unfair manner." *Walker*, 562 U.S. at 320. But Hart identifies nothing unusual about the way California's procedural bar was applied to his claims.[3] Hart also argues that California's timeliness rule improperly discriminated against his federal claims, because California declined to fund his post-conviction investigations, and California courts often resolve capital claims on the merits even when procedural bars may apply. Hart identifies no distinction, however, that California makes between state and federal claims. And, in any event, "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." *Id.* at 311.

Finally, Hart argues that his claim falls into one of the "rare circumstances" in which "unyielding application of [a] general rule would disserve any perceivable interest." *Lee v. Kemna*, 534 U.S. 362, 379–80 (2002). But the Supreme Court has employed this standard only to overcome meaningless formalisms that might otherwise have precluded a meritorious claim. *See id.* at 381–83 (excusing compliance with a rule requiring motions to be made in writing where the motion was made orally and the trial court's resolution of the motion had nothing to do

---

[3] To the extent Hart argues that the procedural bar was unfair because of delays he faced in preparing his petitions, as we explain below, these delays do not provide cause for his procedural default.

6

with this requirement); *Osborne v. Ohio*, 495 U.S. 103, 124 (1990) (excusing a failure to object to jury instructions after the jury was instructed when the trial court had just rejected identical motions challenging those instructions). Here, by contrast, California's rule serves significant finality and timeliness interests, because Hart's claim was filed years after he gathered evidence supporting it. *See Walker*, 562 U.S. at 317. Hart accordingly has failed to show that the CSC's decisions in *Clark* and *Robbins* are inadequate to procedurally bar his claims under these circumstances.

3. Hart argues that even if Claim 12(B) was untimely, any procedural default should be excused. "[A] petitioner can only 'obtain federal review of a defaulted claim by showing *cause* for the default and *prejudice* from a violation of federal law.'" *Leeds v. Russell*, 75 F.4th 1009, 1016 (9th Cir. 2023) (quoting *Martinez v. Ryan*, 566 U.S. 1, 10 (2012)). Hart has not met that burden here.

Hart first argues that he has cause for his procedural default on his second and third state habeas petitions because his state habeas counsel provided ineffective assistance in failing to expeditiously investigate and file his claim. But we have previously held that ineffective assistance of state habeas counsel does not provide cause for failing to timely raise a *Brady* claim. *Hunton v. Sinclair*, 732 F.3d 1124, 1126–27 (9th Cir. 2013) (citing *Martinez v. Ryan*, 566 U.S. at 16). Hart also cites the State's failure to provide funding for his counsel to investigate his

claims as cause for his default. But because Hart had no right to post-conviction representation, *see Coleman v. Thompson*, 501 U.S. 722, 753–54 (1991), much less the right to funding for that representation, the absence of such funding cannot provide cause for the default of his claim.

Hart next argues that his procedural default was caused by the State's failure to provide evidence that Gresham was a government agent and may have testified falsely. This also does not provide cause for Hart's default. Hart was on notice of the factual basis for this claim (to the extent there was a factual basis) as early as his 1995 direct appeal, which asserted that Gresham had acted as a government agent. *See People v. Hart*, 976 P.2d 683, 740 (Cal. 1999). In his 2002 declaration, Gresham also stated that before he testified at Hart's 1988 trial, he told Hart that Hart's counsel should contact him, so that Gresham could communicate "what was going on with the prosecution" (i.e., that the prosecution had placed Gresham in Hart's cell to obtain information).[4] Hart has thus not adequately explained why he was prevented from more timely developing this claim in his state habeas proceedings, nor how the State's alleged withholding of evidence prevented him from doing so. Hart could have contacted Gresham at any time after his 1988 trial

---

[4] In a 2003 deposition, Gresham expressed uncertainty about whether the 2002 statement was accurate, including whether he had told Federal Public Defender investigators that he had been placed in Hart's cell to extract a confession, and whether that was in fact true.

8

to determine whether Gresham was a government agent. Yet he did not file a claim on this theory until 1998, did not interview Gresham until 2002, and did not file an amended petition based on the interview until 2005. The State's alleged withholding of evidence does not explain this delay. *See Walker*, 562 U.S. at 317 (listing California cases finding that multi-year delays barred claims).

Finally, Hart argues that the State's suppression of the full details of Gresham's plea agreement should excuse his delay in bringing a claim regarding the agreement. But Hart cannot show that this delay prejudiced him.

The suppressed evidence regarding Gresham's plea indicates that, without a plea agreement, Gresham could have faced many more charges (and therefore a much more serious penalty) than was revealed at Hart's trial. Gresham acknowledged on cross-examination, however, that he had been facing substantial prison time, and he admitted to proposing to the prosecution that he testify in exchange for a plea agreement. Hart's counsel emphasized the plea agreement in his closing statement, urging the jury not to believe Gresham because he had a motive to fabricate testimony against Hart. The additional evidence Hart references is therefore cumulative of evidence and argument that was already before the jury and lacks materiality. *See Hooper v. Shinn*, 985 F.3d 594, 618 (9th Cir. 2021); *Barker v. Fleming*, 423 F.3d 1085, 1097–98 (9th Cir. 2005); *see also Woods v. Sinclair*, 764 F.3d 1109, 1130 (9th Cir. 2014) (holding that the requirement of

9

prejudice to excuse a procedural default is the same as the *Brady* requirement of materiality).

4. Hart has not shown that jurists of reason would debate the merits of his remaining uncertified claims. *Martinez v. Shinn*, 33 F.4th at 1261. We therefore decline to issue a COA regarding those claims.

**AFFIRMED.**